COMMONWEALTH *vs.* KENNETH H. LING & another.

Plymouth.    February 2, 1976. — May 6, 1976.

Present: HENNESSEY, C.J., REARDON, QUIRICO, BRAUCHER,
& WILKINS, JJ.

*Search and Seizure.    "Threshold" Police Inquiry.    Constitutional Law,*
Search and seizure.

Where a police officer on night patrol received a radio call of a reported break and observed a station wagon, which he recognized and knew was owned by a woman of his acquaintance and knew was easy to hot-wire and start, driven by a man and headed away from the scene of the break, the officer was warranted in stopping the vehicle for a threshold inquiry, under *Terry* v. *Ohio,* 392 U.S. 1 (1968), and under G. L. c. 41, § 98, as amended by St. 1967, c. 268, § 1 [240-241]; it was permissible for the officer immediately to make a flashlight examination of the vehicle and to seize a crowbar and two screwdrivers in plain view as incriminating evidence. [241-242]

INDICTMENTS found and returned in the Superior Court on September 11, 1972, and September 19, 1973.

The cases were heard by *Dwyer,* J.

After review was sought in the Appeals Court, the Su-

preme Judicial Court, on its own initiative, ordered direct appellate review.

*Kenneth D. Weiss* for the defendants.

*Helen M. Doona,* Assistant District Attorney, for the Commonwealth.

REARDON, J. The defendant Kenneth H. Ling was found guilty, in a case subject to G. L. c. 278, §§ 33A-33G, of possession of burglarious instruments and attempting to break and enter in the nighttime. The defendant John E. Ransett was convicted of the same two crimes and also of operating a motor vehicle without a license. The issue before us is whether the trial judge was in error in denying the defendants' motions to strike the admission in evidence of a crowbar and two screwdrivers seized after police officers made an investigatory stop of a motor vehicle in which the defendants were riding, and conducted a flashlight examination of the vehicle which revealed the tools lying in plain view on the floor of the car.

We recite the pertinent facts which the jury could have found. On April 18, 1972, about 3 A.M., Brockton police officers John P. DeChellis and James J. Casey had commenced a patrol in their police cruiser when they received a radio call from a police sergeant reporting the sounding of the burglar alarm at a café where the front door appeared to have been forced open. The sergeant sought assistance. While on their way to, and approximately one mile from, the café the officers observed a motor vehicle headed in a direction opposite to that in which they were traveling. DeChellis recognized the vehicle as the black Chevrolet station wagon owned by a woman known to him, and noted that the driver was a blond-haired male. In the belief that it was stolen, the police made a quick U-turn and pursued the station wagon. When the defendants refused to stop, a chase ensued for about a quarter of a mile, which terminated when the station wagon made a sharp righthand turn into a dead-end area. The driver leapt from the car and tried to escape but was apprehended by Officer DeChellis. DeChellis recognized the driver as the defend-

ant Ransett and, having previous knowledge that he had no driver's license, asked him if he now had one, to which question he received a negative response. He returned with Ransett to the station wagon, having placed him under arrest. He then asked the defendant Ling, and a third defendant not a party to this appeal, David Moore, to get out of the car, which they did. Officer DeChellis next shone his flashlight into the interior of the car and saw a two-foot crowbar and two large yellow screwdrivers on the floor of the front seat of the car. Recalling that the report of the attempted burglary indicated that the front door of the café had been "forced outward," he seized these tools. There was no further search of the station wagon. On request, the defendants then accompanied the officers to the café where Officer DeChellis found marks on the door jamb matching the size and shape of the tools he had found. Samples of the paint chips on the jamb were subsequently analyzed by a State chemist who testified that they were microscopically consistent with paint chips found on the crowbar and the screwdrivers. The denial of the trial judge of the defendants' motions to strike evidence was based on G. L. c. 41, § 98, and the doctrine of "plain view."

1. As to the stopping of the car in which the defendants were riding, we have referred frequently to the rubric which governs the validity of such an intrusion. "[T]he police officer must be able to point to specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant that intrusion." *Terry* v. *Ohio,* 392 U.S. 1, 21 (1968). The *Terry* case indicated that the assessment of the intrusion in light of the Fourth Amendment is based on the answer to the question, "[W]ould the facts available to the officer at the moment of the seizure or the search 'warrant a man of reasonable caution in the belief' that the action taken was appropriate." *Id.* at 21-22. General Laws c. 41, § 98, as amended by St. 1967, c. 368, § 1, provides in part that police officers "may examine all persons abroad whom they have reason to suspect of unlawful design, and may demand of them their business abroad and whither they are going." In the

leading case of *Commonwealth* v. *Lehan,* 347 Mass. 197,
204 (1964), we held this section to permit constitutionally
a brief threshold inquiry where suspicious conduct gives
an officer reason to suspect that an individual has com-
mitted, is committing, or is about to commit a crime. The
justification for initiating, and the reasonableness of the
scope of, a threshold inquiry are factors to be analyzed in
each case on its facts. The principles applicable to the case
at hand have been delineated further in *Commonwealth* v.
*Silva,* 366 Mass. 402, 405-408 (1974), with cases cited,
and require no further definition here. It suffices to say
that the receipt of information by the officers of a reported
break, the observation of the station wagon heading away
from the scene of the reported break, the recognition by
Officer DeChellis of the station wagon, the knowledge of
DeChellis that the owner of the station wagon was a
woman of his acquaintance, the observation that the driver
of the wagon was a man, and the further knowledge of
DeChellis to which he testified that the ignition system of
this particular make of station wagon was easy to hot-wire
combined to satisfy the requirements of the *Terry* case, as
well as to bring the intrusion of the officers under the
appropriate statutory language of G. L. c. 41, § 98. There
can be no constitutional complaint with respect to the ac-
tion of the police officers in stopping this vehicle in light
of the foregoing facts.

2. Nor was there error committed in the admission of
the result of the flashlight examination. As we said in *Com-
monwealth* v. *Cavanaugh,* 366 Mass. 277 (1974), "Like
many other courts, we have held that the use of a flash-
light to look into the interior of a car in … ["threshold
inquiry"] situations does not amount to a search at all."
See *Commonwealth* v. *Haefeli,* 361 Mass. 271, 280 (1972),
vacated sub nom. *Haefeli* v. *Chernoff,* 394 F. Supp. 1079
(D.Mass.), rev'd 526 F.2d 1314 (1st Cir. 1975); *Common-
wealth* v. *LaBossiere,* 347 Mass. 384, 385-386 (1964). In
*Commonwealth* v. *Cavanaugh, supra* at 282, we referred to
a boltcutter and hundreds of quarter-size slugs discovered
on the seat and floor of an automobile at nighttime during

a flashlight examination of the vehicle, stating that they hardly qualified as " 'personal effects, which the Fourth Amendment traditionally has been deemed to protect,' " quoting from *Cardwell* v. *Lewis*, 417 U.S. 583, 591 (1974). In our view the crowbar and the screwdrivers observed by Officer DeChellis in this case have the same status. They qualify for seizure under the "plain view" doctrine. De-Chellis had a prior justification for the intrusion which brought the crowbar and the screwdrivers into plain view, and in these circumstances it was permissible for him to seize those tools as incriminating evidence. *Coolidge* v. *New Hampshire*, 403 U.S. 443, 464-473 (1971). *Commonwealth* v. *Anderson*, 366 Mass. 394, 401 (1974).

3. Since we are of opinion that the stopping of the car, the flashlight surveillance, and the seizure of the burglarious tools were proper in light of the considerations just discussed, we do not discuss the alternative question whether probable cause existed to search the car and whether there were exigent circumstances, except to note that in our view both did exist.

4. Finally, the defendant Ransett asserts that his admission to Officer DeChellis that he did not possess a driver's license should have been suppressed or struck as the "poisoned fruit" of illegal police activity, namely the stop of the car Ransett was driving. The record does not reveal any exception by Ransett to the admission of this evidence. Therefore this issue is not properly before us on appeal. See *Commonwealth* v. *Underwood*, 358 Mass. 506, 509-510 (1970), and cases cited. We simply note that in light of our holding that the stop of the car was proper the defendant Ransett's position is without merit.

*Judgments affirmed.*