COMMONWEALTH vs. HARRY H. HANGER, JR.

Suffolk.    May 9, 1978. — June 1, 1978.

Present: HALE, C.J., GRANT, & ARMSTRONG, JJ.

*Practice, Criminal*, Disclosure of defense witnesses, Discovery, Continuance.

At a criminal trial, any error in the judge's allowance of the prosecutor's motion for discovery with respect to the defendant's alibi without adherence to the criteria set forth in *Commonwealth* v. *Edgerly*, 372 Mass. 337 (1977), was harmless beyond a reasonable doubt. [408–417]

At a criminal trial, the judge did not abuse his discretion in denying the defendant's motion for a continuance in order to secure the presence of a witness who had been subpoenaed by the defendant where the judge could have properly concluded that the witness's testimony would be of only marginal significance. [417–419]

INDICTMENTS found and returned in the Superior Court on May 16, 1977.

The cases were tried before *Mazzone, J.*

*Carol Ethridge (John Leubsdorf* with her) for the defendant.

*Stephen M. Needle*, Assistant District Attorney, for the Commonwealth.

GRANT, J. The defendant has appealed from his convictions by a jury on indictments charging him with kidnapping, assault with intent to rape, assault with force and violence and with intent to rob, and assault and battery by means of a dangerous weapon (a shod foot).[1] He has

___

[1] The defendant was also convicted of simple assault on a companion indictment for assault with intent to murder. That indictment was placed on file with the consent of the defendant, and we are not called upon to decide whether the conviction on that indictment should now be set aside as duplicative of the conviction on one or more of the other

assigned as error (1) the trial judge's allowance of the
Commonwealth's motion for discovery which was not pre-
sented until after the trial had commenced and (2) the
judge's refusal to grant' the defendant's request for a con-
tinuance in order to secure the presence of a witness who
had been subpoenaed by the defendant to testify in his
behalf.

1. As argued, there are three prongs to the first assign-
ment of error, and we think it will be helpful to a consid-
eration of the various legal issues if we first summarize
in some detail the proceedings which had already taken
place prior to the Commonwealth's presentation of its
motion for discovery.

The offences in question are all alleged to have been
committed on April 27, 1977.[2] The indictments were all
returned on May 16. On June 13 the defendant filed an
omnibus set of discovery motions which was disposed of
by a formal stipulation of counsel, ultimately filed in
court on the opening day of the trial, to the effect that the
prosecution had agreed to the disclosure (with inspection
and copying where feasible) of all the following: all writ-
ten or recorded confessions or admissions made by the
defendant, together with the substance of all oral state-
ments which had been made by the defendant but which
had not been reduced to writing; a description of any
conduct of the defendant which the prosecution intended
to introduce as evidence of an implied admission on his
part; all items taken from the possession of the defendant
at the time of his arrest, together with all items taken
from the van which the defendant had been operating at
the time of his apprehension by the police; all evidence
exculpatory of the defendant; the names and addresses of
all persons the prosecution intended to call as witnesses,

indictments for assault. See *Commonwealth* v. *Coburn*, 5 Mass. App.
Ct. 781, 783 (1977); *Commonwealth* v. *Schlieff*, 5 Mass. App. Ct. 665,
672 (1977).

[2] All dates which follow in our narrative were also in 1977.

together with the names and addresses of all persons having knowledge of the case or who had been interviewed in connection therewith but whom the prosecution did not intend to call as witnesses; all written statements made by persons whom the prosecution intended to call as witnesses, together with the substance of their oral statements which had not been reduced to writing; the details of the victim's pretrial photographic identification of the defendant; all photographs taken in connection with the case; all real and physical evidence the prosecution intended to introduce in evidence; all medical, psychological and scientific reports and analyses made or performed with respect to the case; all reports and records of the Boston police department relative to the case; all information known to the prosecution of promises, rewards or inducements of any kind made or offered to any person whom the prosecution intended to call as a witness; and the criminal and probation records of all persons whom the prosecution intended to call as witnesses.[3]

The record does not disclose the details of the information actually disclosed to the defendant by the prosecution, but we do know from the pretrial and trial transcripts that counsel for the defendant had in his possession throughout the course of the trial at least the following: six photographs of the van in which the assault offences were supposed to have been committed; a copy of a written report of his initial investigation which had been prepared and filed by the arresting and investigating police officer (one Carr) on the day of the offences; a copy of a more detailed written statement which the same officer had prepared and submitted to an assistant district attorney on the day following the offences; a tran-

---

[3] The aforedescribed motions and stipulation do not appear in the summary of the record which has been transmitted to us under G. L. c. 278, § 33C, but they do appear in the original papers, which we have sent for and examined.

script of the tape recording of the interview the same officer and the same assistant district attorney had had with the victim in a hospital on May 4, at which time the victim had made a photographic identification of the defendant as her abductor and assailant; and a written synopsis of the anticipated testimony of another police officer who had apparently not filed any written report.[4] We think it reasonable to infer from the defendant's express waiver of his motion for a bill of particulars (except in a respect not here material) and from his failure to object to the substance of any evidence offered by the prosecution during the course of its case in chief (except in one minor respect which was promptly overruled by the judge and which is not now complained of) that prior to trial the prosecution had made full and complete discovery of everything which had been requested by the defendant up to that point.

The trial commenced on the afternoon of July 18. On the morning of the second day of the trial the prosecutor interrupted his direct examination of his first witness (the victim of all the offences) to present the Commonwealth's motion for discovery. That motion set out the Commonwealth's contention that all the offences had been committed at a given location in Boston between 12:05 and 12:15 P.M. on the date alleged in the indictments, summarized the types of discovery which the prosecution had already made, and recited that "[t]he Commonwealth agrees to disclose the names and addresses of any and all prospective rebuttal witnesses within a reasonable time after receipt of discovery from the defense, and stands ready to provide the defense with any changes or additions to information already provided." The prayers of the motion were that the defend-

---

[4] The Commonwealth's discovery motion alleged, and the defendant does not appear to have denied, that the defendant's counsel had also been supplied with the minutes of the grand jury which had returned the indictments.

ant be ordered to disclose "1. [w]hether or not the defendant intends to interpose or rely on a defense of alibi . . . 2. [i]f so, the specific place or places at which the defendant claims to have been at the time of the alleged offense . . . [and] 3. [t]he names and addresses of any and all prospective defense witnesses." Following a bench conference, most of which was not taken stenographically, the judge allowed the motion as phrased,[5] and without imposing any express order for reciprocal discovery on the part of the prosecution. The defendant excepted to the allowance of the motion. The record does not indicate what disclosures counsel for the defendant made to the prosecutor, or when those disclosures were made. We do know that the prosecutor did not object to any witness called by the defendant or to the substance of any testimony offered in his behalf on the ground of failure to comply with what the judge had ordered.

The following facts were not in dispute at the trial. All the offences alleged in the indictments had been committed by one man who had dragged the victim into a van in the vicinity of the Salvation Army Boys Club on Washington Street in Boston and then driven the van a short distance to a point near the corner of Plympton and Washington streets and in the vicinity of the Cathedral housing project, where the man in question had stopped the van and then assaulted and beaten the victim severely before throwing her out of the van and driving off. The van had a camper top, was equipped with a wheel chair in the rear of its interior, and was designed for the transportation of elderly and handicapped persons. It was common ground that all the offences had been committed in the time span between 12:05 and 12:27 P.M. It was also common ground that on the day in question the defendant had been employed as the driver of a radio-equipped

---

[5] The motion also prayed for "4. [a]ny and all statements made to the defense by any witnesses (prospective as to either party)," but the judge denied that particular prayer.

van which met the above description and which was owned and operated by a company engaged in providing transportation for the elderly and the handicapped. The principal dispute at trial was as to whether the defendant had been the driver of the van observed by the victim, as she testified, or whether the assailant had been someone else in a different van, as the defendant contended.[6]

It will be helpful at this point, before discussing any of the evidence offered by the defendant, to outline the reasons now advanced by him in support of his contention that the judge erred in allowing the Commonwealth's motion for discovery.[7] In *Commonwealth* v. *Edgerly,* 372 Mass. 337 (1977), the Supreme Judicial Court had occasion to reconsider its earlier decision in *Gilday* v.*Commonwealth,* 360 Mass. 170, 173 (1971), that a defendant could not be constitutionally compelled to disclose the identities of his alibi witnesses in advance of trial. That reconsideration was conducted in light of the decisions of the Supreme Court of the United States in *Williams* v. *Florida,* 399 U.S. 78 (1970), and *Wardius* v. *Oregon,* 412 U.S. 470 (1973), and in light of Rule 14 of the Massachusetts Proposed Rules of Criminal Procedure for District and Superior Courts (1976). The court responded to the questions reported to it in the *Edgerly* case without adopting a specific rule concerning the compelled discovery of a defendant's alibi but stated its expectations with respect to the outline and general content of a rule which it might adopt on that subject at some future time. The court indicated its expectations that any such rule would require, among other things, (a) that any motion by the Commonwealth directed to the discovery of a defendant's

---

[6] The defendant did not testify, very likely because of his conviction which was considered in *Commonwealth* v. *Hanger,* 357 Mass. 464 (1970).

[7] We give the defendant the benefit of considerable doubt whether all the points now argued were presented to the trial judge for his consideration.

alibi "should be filed reasonably in advance of trial," (b) that any discovery of the defendant's witnesses be limited to "the names and addresses of the witnesses (other than himself) on whom [the defendant] intends to rely to establish his alibi," and (c) that any order for discovery "must direct the Commonwealth to serve on the defendant or his attorney, within a specified reasonable time after the defendant's notice is served on it, a written notice stating the names and addresses of . . . witnesses to be relied on [by the Commonwealth] to rebut testimony of any of the defendant's alibi witnesses." 372 Mass. at 344-345. The defendant complains that none of those criteria was adhered to in the present case. The *Edgerly* case was decided more than three months prior to the trial of the present case, and there is no question as to the occurrence of the deviations complained of. The question for decision by us is whether, on a review of the entire record, we can conclude that those deviations were harmless beyond a reasonable doubt. See *Commonwealth* v. *Baker*, 368 Mass. 58, 77 (1975), and cases cited.

a. The record does not disclose, and even now the Commonwealth does not suggest, the reason why the prosecutor delayed presenting the motion in question until after the trial had commenced. A determination of the question whether the defendant was harmed by that delay requires a consideration of all the alibi evidence offered by the defendant and all the rebuttal evidence offered by the prosecution.

One of the defendant's alibi witnesses was a woman who testified that the defendant had arrived at the New England Medical Center in his van some time between 12:20 and 12:25 P.M. on the day in question and had then driven her to her home in South Boston, a trip which took from ten to fifteen minutes. It appeared from his cross-examination of this witness that the prosecutor had talked with her by telephone some time before she had come into court,[8] but her direct testimony was unshaken

_____

[8] The defendant concedes that the record does not disclose whether the prosecutor had talked with this witness before or after the allow-

in any respect. The prosecutor did not attempt to impeach the testimony of this witness in any way.

The only other alibi witness called by the defendant was the dispatcher for the company which owned the van driven by the defendant on the day in question. This witness testified that he had been in radio communication with the defendant at 12:05 P.M., when he had ordered the defendant to report to him in person at the company's office on Milk Street in downtown Boston; that the defendant had reported by radio when he had arrived at Milk Street at approximately 12:15 P.M.; that he had talked with the defendant in person on Milk Street until approximately 12:17 P.M.; that he had subsequently received a telephone report to the effect that the defendant had arrived at the New England Medical Center at 12:30 P.M. to pick up the other alibi witness just referred to. In rebuttal of that testimony the prosecutor called an Officer Carr, who had been the arresting and investigating officer and who testified that he had interviewed the dispatcher in the afternoon of the day of the offences and that at that time the dispatcher had told him that he had not been in communication with the defendant at any time between 11:50 P.M. and some time between 12:30 and 12:40 P.M. on that day. As already mentioned, counsel for the defendant had been supplied in advance of trial with a copy of the statement which Carr had prepared and submitted to an assistant district attorney on the day following the offences. That statement revealed the fact that Carr had interviewed the dispatcher on the day of the offences. Carr had testified at the pretrial hearing on the defendant's motion to suppress; with the agreement of the defendant, he had been exempted from the operation of the sequestration order which the judge had made at the outset of the trial and prior to the presentation of the discovery motion; he had testified during the

ance of the discovery motion. The evidence discloses that the witness's name appeared prominently in the records of the transportation company.

course of the Commonwealth's case in chief; and he had remained in the courtroom throughout the trial.

The only argument advanced by the defendant as to why he was prejudiced by the delay in presenting the discovery motion is that he was deprived of the opportunity to investigate Carr's rebuttal testimony and shake his credibility. The argument is lacking in realism, even if we assume that Carr would have consented to an interview with counsel for the defendant. As counsel well knew, Carr had interviewed the dispatcher on the day of the offences and was present in court, listening to all the testimony. When counsel called the dispatcher as a witness he should have expected that Carr would be recalled to testify to any prior inconsistent statements the dispatcher might have made to him. That which was predictable actually occurred, but it would have occurred if no discovery motion had ever been filed or allowed. Present counsel's suggestion that trial counsel might not have presented any alibi evidence at all if he had known what Carr would say on rebuttal finds no support in the record and is unconvincing at best. Trial counsel simply took an obvious chance and lost.

b. We deal next with the order that the defendant disclose the identities of all his witnesses. We proceed on the assumption that the defendant did so promptly and note that he called five additional witnesses not already referred to. Two of those witnesses were police officers, one of whom testified that he had found no fingerprints in the van and the other of whom testified that he had found no blood stains in the van. Another witness was an assistant district attorney, who repeated his pretrial testimony concerning the photographic identification of the defendant which the victim had made while still in the hospital and which has already been referred to. Another witness was another driver for the company which owned the van driven by the defendant and who testified that on June 7 he had transported the victim from her home to a physician's office in Brighton and back in a van such as

that which she had described to the police and in her testimony in court; the testimony of this witness had the effect of contradicting the victim's testimony that she had not seen a van meeting her description at any time subsequent to the day of the offences. The remaining nonalibi witness was the executive director of the same company, who testified that the color of the wheelchair in the van driven by the defendant had been different from the color observed by the victim.

We think it would be naive to assume, as the defendant would have us do, that the prosecutor went to trial in ignorance of the substance of the testimony of the two police officers. The prosecutor was obviously aware of the substance of the testimony of the assistant district attorney because in advance of trial he had given counsel for the defendant a transcript of the tape recording of the hospital interview with the victim. It did not appear that any member of the prosecution team had interviewed either of the last two witnesses at any time following the allowance of the discovery motion. The cross-examination of the driver may fairly be described as perfunctory. The testimony of the remaining witness was directed to a peripheral point; he too had been interviewed by Carr on the day of the offences.

The defendant does not point to any specific prejudice arising out of his forced disclosure of the identity of any of the aforementioned witnesses. His argument is best summarized by the general complaint in his brief that "[t]he prosecution had full access to the defendant's plans, while the defendant did not receive reciprocal access." We think the argument ignores the extensive pretrial discovery agreed to and apparently made by the prosecution. Among other things, the defendant had been given the name and at least the substance of the testimony of every witness called by the Commonwealth as part of its case in chief.[9] We find no substance in the defend-

_____
[9] In making this particular observation we intend no intimation on the question whether the judge could have ordered wholesale discov-

ant's argument. Nor do we find anything in the record which even suggests that the defendant's choice of nonalibi witnesses was influenced in any way by the order that he disclose their identities.

c. We deal finally with the absence of any express order for reciprocal disclosure of the identities of the Commonwealth's rebuttal witnesses. As already pointed out, the prosecutor had offered to make such disclosure on the face of the motion, and we think the judge could properly assume the prosecutor would do so, particularly in view of the complete discovery voluntarily afforded by the prosecution in advance of trial. It does not appear from the record that the prosecutor did not make prompt disclosure of Carr's identity as a possible rebuttal witness. Counsel voiced no objection to any of Carr's rebuttal testimony on any ground, least of all the ground of nondisclosure. Once again, the argument as to a supposed deviation from the *Edgerly* criteria lacks realism, because Carr would have been called to testify as he did if no discovery motion had ever been presented or allowed.

On a perusal of the entire record we are convinced that any error in the order allowing the motion for discovery was harmless beyond a reasonable doubt.

2. In his opening statement to the jury, made after the Commonwealth had rested its case in chief, counsel for the defendant advised that he intended to call as a witness a Ruth Barkley, who was identified as living in the Cathedral housing project, and said, "I expect Mrs. Barkley will testify ... that she knows [the victim], and I expect her to testify as to her associations with the [victim] in the past." The examination of the defendant's fifth witness was concluded in the afternoon of the third day of the trial, at which time counsel for the defendant requested a recess until the following morning, when (he

ery by either or both of the parties in advance of trial. See *Commonwealth* v. *Lewinski,* 367 Mass. 889, 900-903 (1975).

said) he would have two witnesses. That request was granted. On the following morning counsel advised the judge that he had one witness available (the alibi witness first referred to above); that he had subpoenaed Mrs. Barkley, who could not then be located; and that she had advised him by telephone that morning that she was going to a hospital because of an injury to one of her feet which had necessitated a cast on her leg and foot. Counsel further advised the judge as follows: "Mrs. Barkley is expected to testify that she has done social work with . . . [the victim], met with her on several occasions, at least six or seven times, spent on each such occasion anywhere from five minutes to forty-five minutes. . . . Each time she has met with [the victim], she has told her her name was Ruth Barkley, and on various occasions after these meetings she would meet [the victim] walking to and from the store and around the Cathedral Project and greeted her, 'Good morning,' and [the victim] has looked at Mrs. Barkley and asked, 'Who are you?'." Counsel stated his expectation that Mrs. Barkley could be located that morning and requested that "we be given a short period of time to locate her." The prosecutor objected to a continuance and refused to stipulate as to the desired testimony.

The judge remarked, among other things, that such testimony would be "very, very collateral." He refused to grant "an indefinite continuance of any kind" but said he would permit the defendant to call Mrs. Barkley out of order at any time prior to the conclusion of all the evidence. The defendant then called the alibi witness just referred to, as well as the executive director of the transportation company. The prosecutor followed with Carr in rebuttal. Both sides rested immediately prior to the morning recess, without any further report on Mrs. Barkley's availability and without the defendant's making any further request for a continuance.

When the continuance was requested the judge was not advised as to how many further witnesses either side might wish to call, nor was he given any idea how long

it might be before Mrs. Barkley could be located (see *Commonwealth* v. *Lee*, 324 Mass. 714, 717 [1949]; *Commonwealth* v. *Swenor*, 3 Mass. App. Ct. 65, 67 [1975]) or as to whether she was even ambulatory. Nor was the judge given a time frame for the alleged encounters between Mrs. Barkley and the victim. The victim was eighty-three years old, and the desired testimony would have been directed to the reliability of her memory and powers of observation rather than to the events of the day in question. See *Commonwealth* v. *Chase*, 372 Mass. 736, 747 (1977); *Commonwealth* v. *Pettijohn*, 373 Mass. 26, 30 (1977). At the conclusion of the pretrial hearing on the defendant's motion to suppress the judge had characterized the victim as "intelligent, candid, perceptive [and] honest" and as "positive and definite"; at a bench conference during the trial he had suggested that the prosecutor not "baby the witness because she doesn't need it." See *Commonwealth* v. *Dukes*, 3 Mass. App. Ct. 771, 772 (1975). In the circumstances the judge could properly have concluded that the desired testimony would be of only marginal significance in the total context of the trial, and we are not persuaded that he abused his discretion in denying the requested continuance. See *Commonwealth* v. *Bettencourt*, 361 Mass. 515, 519-520 (1972), denial of habeas corpus aff'd sub nom. *Frates* v. *Bohlinger*, 472 F.2d 149 (1st Cir. 1973); *Commonwealth* v. *Gilchrest*, 364 Mass. 272, 273-274, 276-277 (1973); *Commonwealth* v. *Darden*, 5 Mass. App. Ct. 522, 531-532 (1977).

*Judgments affirmed.*