COMMONWEALTH vs. JOHN E. FERRIOLI.

Middlesex.  May 9, 1980. — September 9, 1980.

Present: HALE, C.J., KASS, & NOLAN, JJ.

*"Threshold" Police Inquiry.  Probable Cause.  Arrest.  Search and Sei-
zure.  Firearms.*

Upon receiving information from a defendant's wife that the defendant
had a gun, had said he would use it, and that he might be under the in-
fluence of drugs, the police were justified in their initial stop of the de-
fendant's automobile and in their subsequent pat-down search for a
firearm.  [490-493]

COMPLAINTS received and sworn to in the First Eastern
Middlesex Division of the District Court Department on Au-
gust 21, 1978.

A pretrial motion to suppress evidence was heard by *Sher-
man*, J.

*Peter W. Agnes, Jr.*, Assistant District Attorney, for the
Commonwealth.

*Christopher J. Muse* for the defendant.

KASS, J.  Forewarned that he was armed with a pistol,
was suffering from drug withdrawal, and had that day
threatened to shoot holes in his wife's house, Malden police
officers stopped and searched Ferrioli and found him in
possession of a small caliber automatic handgun and a can
of mace.  Preliminary to trial on charges of unlawfully car-
rying a firearm (G. L. c. 269, § 10[*a*]) and unlawful posses-
sion of ammunition (G. L. c. 269, § 10[*h*]),[1] the defendant
Ferrioli moved to suppress the pistol and can of mace taken

---

[1] From the complaint which makes the second charge we learn that the
"ammunition" was a can of mace, an incapacitating gas.  See G. L.
c. 140, § 122B, as amended by St. 1971, c. 456, § 2.

from him. The Commonwealth appealed as of right from the allowance of that motion under Mass.R.Crim.P. 15(a)(2), 378 Mass. 882 (1979).

In his findings, rulings and order, the District Court judge concluded, "There being no probable cause sufficient in law to justify the officer's intrusion, the motion to suppress is allowed." Questions by the judge to the arresting officer suggest that the judge focused his attention on whether there was probable cause to arrest Ferrioli. We think that there was probable cause to make a preliminary stop of Ferrioli and a search of his person under the principles announced in *Terry* v. *Ohio*, 392 U.S. 1 (1968), and discussed in decisions such as *Commonwealth* v. *Silva*, 366 Mass. 402 (1974), *Commonwealth* v. *Almeida*, 373 Mass. 266 (1977), and *Commonwealth* v. *Ferrara*, *post* 818 (1980). There was also probable cause to arrest Ferrioli under principles discussed in *Draper* v. *United States*, 358 U.S. 307, 312-313 (1959); *Commonwealth* v. *Storey*, 378 Mass. 312, 321 (1979); and *Commonwealth* v. *Piso*, 5 Mass. App. Ct. 537, 541 (1977).

From the findings of the motion judge (with some supplement from the transcript of the motion hearing), we learn the following: Domestic travail between the defendant and his wife had led to threats by the former that he would shoot holes in the house where Mrs. Ferrioli was living (it was not the marital domicil). She and her sister-in-law were sufficiently alarmed to call for the police at about 2:30 P.M., August 19, 1978. To the officer who responded Mrs. Ferrioli said she was concerned about the threat because her husband carried a gun strapped to the middle or lower part of his back and because he had fired it at her previously during an argument in their home in Everett. Moreover, he had an addiction to amphetamines and was trying to "dry out." She also gave the police officer a description of her husband and the car he was driving, an orchid-colored Cadillac with Massachusetts registration 125-ALN.

This information was communicated to the incoming shift of the Malden police department. At about 6:30 P.M.

another Malden police officer, Healy, spotted Ferrioli in his orchid Cadillac. Healy called his headquarters and, when assistance from another police cruiser arrived, stopped Ferrioli. Upon making the stop, Healy told the driver to keep his hands in plain sight and asked his name. Ferrioli identified himself. Healy then made a stolen car check. He asked Ferrioli if he could look in the trunk of Ferrioli's car. Ferrioli declined. While this was going on, a total of four police cars and seven to nine policemen had gathered on the scene. Healy then ordered Ferrioli out of his car, made a pat-down search, found the handgun on his person and arrested him. As Ferrioli stepped out, Healy saw the can of mace in plain view on the driver's seat.

In view of the information the police possessed, i.e., that Ferrioli had a gun, had said he would use it, and that he might be under the influence of drugs, their initial stop of him was constitutionally permissible. The police had solid grounds to suspect that Ferrioli was committing or was about to commit a crime. *Commonwealth* v. *Lehan*, 347 Mass. 197, 201-204 (1964). This principle extends to stops of motor vehicles. *Commonwealth* v. *Ling*, 370 Mass. 238, 240-241 (1976). *Commonwealth* v. *Ferrara*, 376 Mass. 502, 504 (1978). *Commonwealth* v. *Johnson*, 6 Mass. App. Ct. 944, 945-946 (1978). The arresting officer was entitled to rely on the information relayed via the officer who first responded to Mrs. Ferrioli's call, *id.* at 945, and was justified in relying and acting upon the detailed information (where her husband carried a gun, what kind of car he drove) furnished by the potential victim. See *Adams* v. *Williams*, 407 U.S. 143, 146-147 (1972). See also *Commonwealth* v. *Ballou*, 350 Mass. 751, 756 (1966), cert. denied, 385 U.S. 1031 (1967); *Commonwealth* v. *Anderson*, 366 Mass. 394, 397-400 (1974). Indeed, it would have been cavalier of the police not to have intercepted the defendant, taking into consideration his threats and apparent state of mind.[2]

---

[2] It is easy to imagine the hue and cry which would have been raised if the police had done nothing and the defendant had shot his wife.

It is necessary to inquire next whether the scope of the warrantless search was justified by the circumstances. Given the factual context, the confines of the search were within what was minimally necessary to learn whether the suspect was armed and, if so, to disarm him. *Commonwealth* v. *Silva*, 366 Mass. at 408. *Commonwealth* v. *Almeida*, 373 Mass. at 272. The extent of the officers' fear for their own personal safety is a significant consideration in evaluating their conduct. *United States* v. *Beck*, 598 F.2d 497, 501 (9th Cir. 1979). Cf. *United States* v. *Ramos-Zaragosa*, 516 F.2d 141, 144 (9th Cir. 1975). In the instant case the officers were warranted in feeling apprehensive about their safety; they had reason to believe the defendant was armed, prone to violence, and under the influence of excitatory drugs. Significantly, Officer Healy did not move in on the defendant until a back-up car arrived on the scene. He engaged in fairly routine questioning until four cruisers surrounded the defendant, and then ordered him out for the pat-down search. The brief delay in the pat-down search may have afforded the police an opportunity to assess the situation and the stability of the defendant. Unlike the case such as *Commonwealth* v. *Silva, supra,* the police did not pry into the innards of the car after a frisk of the suspect turned up no weapon. Ordering the defendant out of his car is within the bounds of acceptable intrusion under *Pennsylvania* v. *Mimms*, 434 U.S. 106, 111 (1977). Compare *Commonwealth* v. *Ferrara*, 376 Mass. at 505, where, after the initial stop, the police had no basis for further interrogation. Here, on the basis of the complaint made by Ferrioli's wife, the police, as we have noted, had reason to believe that, at the least, Ferrioli was unlawfully carrying a firearm. It was proper for the police to presume that Ferrioli did not have a license to carry a firearm. See *Commonwealth* v. *Jones*, 372 Mass. 403, 406 (1977).

Since the police had probable cause to believe Ferrioli was committing a felony, and so to arrest him, see *United States* v. *Watson*, 423 U.S. 411, 416-422 (1976), they had a basis to search him incident to his arrest. *United States* v.

*Robinson,* 414 U.S. 218, 224-226 (1973). See *Commonwealth* v. *Tarver,* 369 Mass. 302, 308 (1975); *Commonwealth* v. *Murphy,* 6 Mass. App. Ct. 335, 344-345 (1978); LaFave, Search and Seizure § 5.2 (1978). We need not consider, therefore, the length of the defendant's detention (not in excess of five minutes) before he was searched. To the extent the time for an investigatory search had expired (we do not so decide), the search was valid as accompanying the arrest. Compare *United States* v. *Richards,* 500 F.2d 1025, 1028-1029 (9th Cir. 1974), cert. denied, 420 U.S. 924 (1975); *United States* v. *Russell,* 546 F.2d 839, 840 (9th Cir. 1976) (Wright, J., specially concurring, at 841).

Since the intrusion was within permissible limits, we reverse the order suppressing the pistol seized from the defendant and the can of mace found on the car seat.

*So ordered.*