COMMONWEALTH *vs.* RACHELLE A. DiMATTEO
(and seven companion cases[1]).

Middlesex.    September 11, 1981. — November 2, 1981.

Present: GRANT, PERRETTA, & KASS, JJ.

*Search and Seizure*, Automobile, Container. *Constitutional Law*, Search
and seizure. *Jury and Jurors. Practice, Criminal*, Challenge of jurors,
Instructions to jury, Sentence. *Firearms. Motor Vehicle*, Firearms.
*Robbery*.

Where, after police officers had stopped the two defendants' automobile
and arrested them for an armed robbery committed only minutes
before, another officer observed on the floor of the automobile an open
pocketbook of the type described by the victim of the robbery as carry-
ing the gun used by the robber, and where the officer then saw a gun
and cash inside the pocketbook, the officer was entitled to search and
seize the handbag and its contents. [548-551]
Where counsel for two white defendants at a criminal trial in which the
prosecutor was black peremptorily challenged the only black prospec-
tive juror on the venire, the trial judge could appropriately find based
on the timing and manner of the reasons subsequently offered for the
challenge, that the reasons given were not genuine and that the chal-
lenge was exercised with intent to exclude the juror because of her
race; thus no error occurred in the judge's denial of the challenge.
[551-553]
At the trial of complaints under G. L. c. 269, § 10(*a*), the judge properly
instructed the jury with respect to the Commonwealth's burden of
proving beyond a reasonable doubt that the weapon described in the
complaints was under the defendant's control. [553-554]
At a criminal trial of two defendants, there was sufficient evidence to
warrant a finding beyond a reasonable doubt that the defendants were
engaged in a joint enterprise to commit an armed robbery. [554-555]
Sentences imposed under G. L. c. 269, § 10(*a*), for unlawfully carrying
a firearm under one's control in a motor vehicle and under c. 140,
§ 129C, for unlawful possession of a firearm were duplicative because
the latter complaint was a lesser included offense of the former. [555]

[1] Three of the companion cases are against Rachelle A. DiMatteo and
four are against Tara J. Donlon.

COMPLAINTS received and sworn to in the Second Eastern Middlesex Division of the District Court Department, six on September 19, 1979, and two on September 20, 1979.

In the Superior Court Department, a pretrial motion to suppress evidence was heard by *Connolly, J.,* and the cases were tried before *Hallisey, J.*

*Arnold R. Rosenfeld (Ellen A. Howard* with him) for Tara J. Donlon.

*William P. Homans, Jr. (Anne E. Braudy* with him) for Rachelle A. DiMatteo.

*Peter W. Agnes, Jr.,* Assistant District Attorney *(Carmel A. J. Motherway,* Assistant District Attorney, with him) for the Commonwealth.

KASS, J. In perpetrating the crimes of which they stand convicted — larceny,[2] unlawful possession of a firearm,[3] armed robbery[4] and unlawful carrying of a firearm[5] — the defendants laid less than cunning plans. They arrived and left the scene of the crime, during daylight, in a silver Buick convertible automobile with the top down. It is hardly surprising that the police were able to catch the defendants within minutes of the robbery.

1. *Lawfulness of the Automobile Search.*

As a threshold issue, the defendants appeal from the refusal of a Superior Court judge to suppress a brown suede handbag which the police had found in the passenger compartment of the car. We summarize the findings which the judge made on the suppression motion, supplemented with undisputed details which appear in the transcript of the suppression proceedings. The defendants, young women, drove into a self-service filling station on Lexington Street in Waltham. The driver (at trial it developed this was DiMatteo) emerged and pumped gas. When she finished, the passenger (Donlon) went to the cashier's booth, placed a brown

---

[2] G. L. c. 266, § 30.

[3] G. L. c. 140, § 129C. See also G. L. c. 140, § 131.

[4] G. L. c. 265, § 17.

[5] G. L. c. 269, § 10(*a*).

suede pocketbook on the counter, withdrew a gun from it, and ordered the cashier to give her "all the money."[6] A bulletin about the robbery was broadcast over the police radio promptly upon receipt of a complaint from the cashier who had been held up. That message described the suspects, their singular car, the direction in which they had headed, the brown suede purse, the handgun, and the amount of money stolen. Police officers in the first cruiser to spot the Buick convertible brought the defendants to a stop, approached them with their service revolvers drawn, and ordered the women out of their car. The officers separated the defendants, advised them of their rights and placed them under arrest. Meanwhile, a third officer, Lyons, arrived in another cruiser and looked into the open passenger compartment of the defendants' car. He found an empty gun holster on the car seat and the brown suede pocketbook on the floor below the front passenger seat. The snaps of the bag were open and Lyons saw in it a gun and eighty-three dollars in cash. Lyons also noted that the bag was suggestively heavy.

No one challenges the legitimacy of the initial stop of the defendants' car; there was every reason to suspect the defendants of unlawful design. G. L. c. 41, § 98. *Commonwealth* v. *Ling*, 370 Mass. 238, 240-241 (1976). *Commonwealth* v. *Ferrioli*, 10 Mass. App. Ct. 489, 491 (1980). Contrast *Commonwealth* v. *Ellis, ante* 476 (1981). It is also self evident that the police officers, in view of the radio bulletin, had probable cause to arrest the defendants and did, indeed, place them under arrest. Passing the point that in an open convertible the telltale brown handbag was in plain view, the officers, who had made a lawful arrest, had probable cause to believe that a search incident to that arrest would yield the fruits and the instrumentalities (the cash and the gun), as well as other evidence (the brown bag), of the crimes for which the

---

[6] It is an age of credit cards and "all the money" was modest: approximately $80.

arrest had been made. G. L. c. 276, § 1, as amended by
St. 1974, § 508.[7] See *Commonwealth* v. *Dickerson*, 372
Mass. 783, 786, 792 (1977). Compare the somewhat
broader search power incident to an arrest countenanced by
decisions of the United States Supreme Court in *Chimel* v.
*California*, 395 U.S. 752, 763 (1969); *New York* v. *Belton*,
453 U.S. 454, 460-462 (1981). See also *Commonwealth* v.
*Ortiz*, 376 Mass. 349, 357-358 & n. 7 (1978). Compare
*Commonwealth* v. *Silva*, 366 Mass. 402, 408-410 (1974).

But, the defendants argue, the handbag itself should not
have been the subject of a warrantless search because the
purse enjoyed a status akin to luggage. Searches of closed
opaque containers in automobiles, subject to certain excep-
tions, were proscribed by *Arkansas* v. *Sanders*, 442 U.S.
753, 764-765 (1979). See also the recently decided case of
*Robbins* v. *California*, 453 U.S. 420 (1981), applying the
*Sanders* rule to closed containers other than luggage. The
reason for that rule is that persons have an expectation of
privacy in closed containers and that, unless driven to do
otherwise by exigent circumstances, the police should secure
a search warrant before rummaging through a private con-
tainer. In few possessions, the defendants contend, is there
a greater expectation of privacy than a woman's purse.

It is a line of argument that suffers from exposure to the
facts in the case. The motion judge found that the handbag
was open when Officer Lyons picked it up from the car
floor and that he could see inside it. There is evidence in
the record to support this finding, and we do not disturb
it. See *Commonwealth* v. *Moon*, 380 Mass. 751, 755-756
(1980). We have examined the bag and it is of the tote

---

[7] General Laws c. 276, § 1, provides in pertinent part: "A search con-
ducted incident to an arrest may be made only for the purposes of seizing
fruits, instrumentalities, contraband and other evidence of the crime for
which the arrest has been made, in order to prevent its destruction or con-
cealment; and removing any weapons that the arrestee might use to resist
arrest or effect his escape. Property seized as a result of a search in viola-
tion of the provisions of this paragraph shall not be admissible in evidence
in criminal proceedings."

bag variety, loosely constructed and without any narrowing at the neck. A person holding the bag will see into it unless making a conscious effort not to; we do not ask police officers to so avert their eyes from potentially incriminating evidence. See *Commonwealth* v. *Ling,* 370 Mass. at 241-242; *Commonwealth* v. *Corridori,* 11 Mass. App. Ct. 469, 476-477 (1981). In addition to what one might see, it was possible, owing to the soft and thin material of the handbag, to feel a gun inside it. Contrast *Commonwealth* v. *Silva,* 366 Mass. at 410.

Above all, it is well to bear in mind that the police had been alerted to look for a brown suede bag in which there was likely to be a gun. When Donlon, in sight of the gas station cashier, used the handbag as a carrying case for the gun she surrendered her rights of privacy in the handbag, and the defendants' protestations about the sanctity of a woman's pocketbook take on a tone of false piety.

2. *Selection of the Jury.*

During the selection of the jury the defendants made a peremptory challenge of the only black juror on the venire.[8] To this the Commonwealth objected on the ground that, except for her race, the juror's background (e.g., age, occupation) was consistent with other jurors to whom the defense had signified no objection. Therefore, the Commonwealth contended, the defendants' challenge must have been impermissibly used to exclude the prospective juror by reason of her membership in a particular group in the community. See *Commonwealth* v. *Soares,* 377 Mass. 461, 486, cert. denied, 444 U.S. 881 (1979). A colloquy among counsel and the judge followed as to whether the *Soares* principle should be applied in the circumstances. When it became apparent that the judge was going to disallow the challenge because it appeared to be racially motivated, counsel for Donlon offered another reason: the juror was a widow. It was not lost on the judge that widowhood was a tenuous in-

---

[8] The procedures for making peremptory challenges appear in Mass.R. Crim.P. 20(c), 378 Mass. 890 (1979).

dicator of bias in connection with the crime of armed robbery of a gas station. He expressed skepticism. Defense counsel shifted ground again, evincing concern about the way the juror "looks at the defendant." Acknowledging that the reasons offered were credible ones, the judge nonetheless found they were "insufficient" and denied the challenge. There was no error.

We take as the starting point for our analysis the principle already adverted to, viz., that it is a misuse of a peremptory challenge "to eliminate jurors solely because of their membership in discrete groups." *Commonwealth* v. *Allen*, 379 Mass. 564, 576 (1980). *Commonwealth* v. *Reid*, 384 Mass. 247, 253 (1981). But the peremptory challenge retains effectiveness to remove from a panel jurors whose particular relationship to the case at bar "raises the spectre of individual bias." *Commonwealth* v. *Soares*, 377 Mass. at 485. *Commonwealth* v. *Allen*, *supra*. For this reason peremptory challenges are presumptively valid. *Commonwealth* v. *Soares*, *supra* at 489. *Commonwealth* v. *Walker*, 379 Mass. 297, 301 (1979). But that presumption may be rebutted by a pattern of challenges of potential jurors of a discrete group and the likelihood that their exclusion is sought to purge the jury of a particular group. *Commonwealth* v. *Soares*, *supra* at 489-490. *Commonwealth* v. *Walker*, *supra*. Sorting out whether a permissible or impermissible reason underlies a peremptory challenge is the function of the trial judge, and we do not substitute our judgment for his if there is support for it on the record. *Id. Commonwealth* v. *Reid*, 384 Mass. at 255-256.

Adequate basis for the judge's findings of improper exclusionary purpose appears in the record before us. The defendants are white, the prosecutor is black, and the juror in question, it will be recalled, was the only black person on the venire. When the Commonwealth protested the challenge, the response offered by the defense was largely that the *Soares* line of cases ought not to apply. The judge was correct in taking the position that the Commonwealth, as well as the defendant, was entitled to a jury which was not artificially stripped of members of a particular racial or eth-

nic group. *Commonwealth* v. *Soares*, *supra* at 488, 489-490 & n.35. *Commonwealth* v. *Little*, 384 Mass. 262, 265 (1981). It was open to the trial judge to find, based upon the timing and manner of the reasons subsequently offered for the challenge, that those were not genuine. Widowhood, in the circumstances, had no significance and, while the way the juror "looks at the defendant" falls in the smirk category of justifications referred to in *Commonwealth* v. *Kelly*, 10 Mass. App. Ct. 847 (1980), the judge could find in the instant case that the reason stated was not the real one.

There is lacking from the case "a pattern of conduct." While such a pattern is an earmark of improper use of peremptory challenges, we are not prepared to say it is an essential ingredient. If exclusion of a discrete population group from a jury for no better reason than membership in such group violates art. 12 of the Declaration of Rights of the Massachusetts Constitution, the dismissal of the only member of the banished group is as repugnant to the Declaration of Rights as the dismissal of all but one member of the target group. See *Commonwealth* v. *Robinson*, 382 Mass. 189, 195-196 (1981). Compare *Commonwealth* v. *Clark*, 378 Mass. 392, 407 n.17 (1979), where the only black person among fifty potential jurors was challenged by the prosecution. The propriety of the challenge was upheld, not because of the want of a pattern, but because the record did not contradict the trial judge's finding that "I have no facts nor evidence to suggest that he [the prosecutor] is making any purposeful challenge based upon race or sex." *Id.* Here the record discloses circumstances sufficient to support an inference that the contested challenge was exercised with intent to exclude a juror on the basis of her belonging to a particular race. Cf. *Commonwealth* v. *Robinson*, 382 Mass. at 194-196; *Commonwealth* v. *Brown*, 11 Mass. App. Ct. 288, 292-295 (1981).

3. *The Instructions to the Jury.*

DiMatteo, the driver of the car, claims that, in instructing the jury, the judge misstated the elements of the offense

of carrying a firearm under her control in a vehicle without a license to carry firearms. G. L. c. 269, § 10(a). According to this defendant, the flaw is that the judge did not inform the jury that the government was required to prove that the weapon was under her control. Only the most tortured dissection of the judge's charge could support DiMatteo's position. The judge said in defining control that it required "[k]nowledge, ability to reduce to manual subjugation or dominion, and some conditional intent." Later he spoke of "control in a motor vehicle, as concerns Miss DiMatteo" and that the jury must find beyond a reasonable doubt that "Miss DiMatteo had control of the firearm in the vehicle." The instruction was consistent with the offense as described in *Commonwealth* v. *Albano*, 373 Mass. 132, 133-135 (1977), *Commonwealth* v. *Gray*, 5 Mass. App. Ct. 296, 299 (1977), and *Commonwealth* v. *Collins*, 11 Mass. App. Ct. 583, 584 (1981). No confusion could have resulted from the judge's remark that "control" was like "possession." Possession does imply "control and power." See *Commonwealth* v. *Harvard*, 356 Mass. 452, 458 (1969); *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. 563, 567-568 (1980).

After beginning their deliberation, the jury asked for further instruction on the difference between unlawful possession and unlawfully carrying a firearm. We have no quarrel with the judge's response and, in any event, the question could only have applied to the defendant Donlon, who made no objection to the written answer which the judge sent to the jury.

4. *Required Finding of Not Guilty.*

DiMatteo, who had pumped gas and then returned to her car, moved for a required finding of not guilty on the charges of armed robbery, unlawful carrying of a firearm and unlawful possession of a firearm. Viewing the evidence in the light most favorable to the Commonwealth (*Commonwealth* v. *Kelley*, 370 Mass. 147, 150 [1976]), we find sufficient evidence to permit rational minds to conclude beyond a reasonable doubt that the defendants were engaged

in a joint enterprise to commit an armed robbery. *Commonwealth* v. *Latimore*, 378 Mass. 671, 677 (1979). See *Commonwealth* v. *Whitehead*, 379 Mass. 640, 653-654 (1980). Compare *Commonwealth* v. *Chinn*, 6 Mass. App. Ct. 714, 716-717 (1978). DiMatteo drove away without paying for the gas. There was an empty gun holster in the middle of the front seat of the car DiMatteo was driving. See *Commonwealth* v. *Kennedy*, 3 Mass. App. Ct. 218, 225 (1975). Contrast *Commonwealth* v. *Perry*, 357 Mass. 149, 152 (1970). Similarly, there was sufficient evidence from which the jury might infer that the gun was under DiMatteo's control. See *Commonwealth* v. *Albano*, 373 Mass. at 134; *Commonwealth* v. *Deagle*, 10 Mass. App. Ct. at 567-568.

Although the defendants have not raised the point, we note that the sentences imposed under G. L. c. 269, § 10(*a*) (carrying or control in a motor vehicle), and under G. L. c. 140, § 129C (possession), are duplicative because the elements of the former include those of the latter. Only the sentence imposed for the more serious crime is valid. *Kuklis* v. *Commonwealth*, 361 Mass. 302, 306-309 (1972). See *Commonwealth* v. *Grasso*, 375 Mass. 138, 140 (1978), in which the court noted duplicative sentences but did not disturb them because they were concurrent. But see *Commonwealth* v. *Jones*, 382 Mass. 387, 396 (1981), which discusses adverse collateral consequences of duplicitous convictions and concludes that, even where the sentences are concurrent, the conviction and sentence on the lesser included offense should be vacated. See also *Commonwealth* v. *Coburn*, 5 Mass. App. Ct. 781, 783 (1977); *Commonwealth* v. *Hanger*, 6 Mass. App. Ct. 407, 408-409 (1978), *S.C.* 377 Mass. 503 (1979). Accordingly, the judgments on the complaints of unlawful possession are reversed, the verdicts on those complaints are set aside, and the complaints are dismissed. The judgments on all the other complaints are affirmed.

*So ordered.*