COMMONWEALTH vs. JAMES THOMAS.

Hampden. September 20, 1984. — November 23, 1984.

Present: GREANEY, C.J., ROSE, & PERRETTA, JJ.

*Rape. Practice, Criminal,* Challenge of jurors. *Evidence,* Other offense.

At the trial of a black defendant charged with the statutory rape of a black victim, the judge properly concluded that the prosecutor's use of peremptory challenges to exclude two black jurors was based on nonracial motives. [2-4]

At the trial of a statutory rape case, there was sufficient evidence of penetration, including testimony by an expert witness that certain injuries sustained by the victim were "classical injuries associated with attempted intercourse," to warrant denial of the defendant's motion for a required finding of not guilty. [4-5]

At the trial of a statutory rape case, the judge did not err in permitting the six year old victim to testify that the defendant had on other occasions had sexual contact with her, even though the victim was unable to specify the dates of these acts, where certain testimony by the victim's mother removed the possibility that the other acts were too remote in time. [6]

INDICTMENT found and returned in the Superior Court Department on June 21, 1982.

The case was tried before *Raymond R. Cross, J.*

*Arthur D. Serota* for the defendant.

*Elizabeth G. Dineen,* Assistant District Attorney (*Dianne M. Dillon,* Assistant District Attorney, with her) for the Commonwealth.

ROSE, J. Thomas appeals from his conviction, following a jury trial in the Superior Court, of rape of a child under sixteen. G. L. c. 265, § 22A. He complains of three alleged errors at trial. The first claimed error pertains to the exclusion of two black venire members from the jury in violation of *Commonwealth* v. *Soares,* 377 Mass. 461 (1979). Both Thomas and the victim are black. The second error alleged is the judge's refusal to enter a required finding of not guilty because of the legal insufficiency of evidence of penetration. The third claimed error concerns admission of testimony by the victim that the defendant had raped her on other occasions. We affirm the conviction.

On the basis of the Commonwealth's evidence, the jury could have found the following. The victim is a six year old girl who, at and before the time of the alleged rape, frequently stayed at the Thomas residence while her mother was at work. On or about April 8, 1982, Thomas called the victim into his house and sent her upstairs to call her mother. He followed the victim upstairs and prevented her from making the call. He then removed his trousers and the victim's and applied a mixture of hand cream and baby oil to his and the victim's genitals. He told the victim to lie down on the bed. He subsequently lay down on her, rising when she began to cry. He then warned her not to tell anyone. The victim cleaned herself off, got dressed, and went home. On April 27, her mother took the victim to a doctor for treatment of a vaginal itch. That same day, her mother discovered the victim in the basement of her home with a four year old boy whose belt buckle was unfastened. These incidents prompted a maternal interrogation on the topic of disrobing and similar activities with males. During the discussion, the victim told her mother about the incident with Thomas. She also revealed, and testified later, that Thomas had had sexual contact with her more than once. She could not, however, pinpoint specific dates.

1. Of the forty-two jurors interviewed on voir dire, twelve whites and two blacks were peremptorily challenged and re-

moved. The prosecutor challenged both black jurors. After the second black juror was challenged defense counsel moved for a mistrial, citing the *Soares* decision. The judge then asked the prosecutor to justify the challenges.

At the side bar, the prosecutor explained that he had challenged one black juror because she did not answer a subpoena when she was called for jury duty and was arrested by court officers. The juror claimed she had never received the subpoena. The prosecutor believed that this incident might have prejudiced her against the Commonwealth as a result of her being arrested and brought into court. The prosecutor explained that he had challenged the other juror on the basis of his policy that "if a juror has sat on a case and the verdict has been not guilty, I [challenge] that particular juror, and I have been doing that as to whites or blacks and all the jurors."

The judge denied the motion for a mistrial, noting that peremptory challenges do not really require a reason. "[T]he first black that he let go . . . looked a little too young and maybe not mature to handle that kind of a question. . . . The last one if I knew that was the thinking, I could have inquired about that because I don't think that is really too valid." The judge also suggested that if "the alleged victim were white, I might rule the other way."

*Commonwealth* v. *Soares, supra,* articulated the rule that art. 12 of the Declaration of Rights of the Massachusetts Constitution prohibits the use of peremptory challenges to exclude venire members from a jury by virtue of their membership in "discrete groups." *Soares* expressly recognized race as a forbidden category for art. 12 purposes.

*Soares* provides a standard for evaluating the validity of peremptory challenges. Such challenges are presumed proper until several members of the same discrete group are challenged and it appears likely that group membership was the reason for the challenges.[1] Once the trial judge finds that the presumption of propriety has been rebutted, he may request that the chal-

---

[1] In *Commonwealth* v. *DiMatteo,* 12 Mass. App. Ct. 547, 553 (1981), we held that the requirement that "several" members be excluded does not function as a shelter for even one inappropriate challenge.

lenges be justified. Justification is adequate if it consists of a reason that "pertain[s] to the individual qualities of the prospective juror and not to that juror's group association." *Soares*, 377 Mass. at 491. This reason need not rise to the level of grounds required for a challenge for cause. Moreover, the trial judge retains discretion to distinguish between bona fide and sham excuses. We note that the distinction here drawn is between good and bad faith, *not* good and bad explanations. "Sorting out whether a permissible or impermissible reason underlies a peremptory challenge is the function of the trial judge, and we do not substitute our judgment for his if there is support for it on the record." *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 552 (1981).

This record sustains the exercises of the challenges. The prosecutor's stated reasons support a finding of nonracial motives for excluding both jurors. The judge's suggestion that one reason was "not too valid" and his suggested alternative reason for excluding the other juror do not permit us to infer that he found both reasons invalid. The judge's suggestion that a mistrial might have been proper had the victim been white is, in our view, an appropriate consideration in a *Soares* analysis. "Common group membership of the victim and the majority of remaining jurors is likewise a significant factor." *Soares*, 377 Mass. at 490.[2] We conclude that the prosecutor's challenges were supported by adequate explanations and did not contravene *Soares*.

2. The Commonwealth's evidence on the element of penetration was as follows. The victim testified that her "privacy" felt "bad" when Thomas "laid on" her. The doctor who examined the victim testified that the opening in her hymen was twice the normal diameter for that of a girl her age and that her hymen contained two "posterior tears" that were "classical injuries associated with attempted intercourse." The expert also testified that such damage was not usually self-inflicted

---

[2] The relevance of this factor, however, is primarily in the trial court's determination that the presumption of the propriety of peremptory challenges has been rebutted, not in weighing the adequacy of subsequent explanations.

by six year olds. However, the doctor could not entirely rule out the possibility that a blunt instrument had caused the injury.

*Commonwealth* v. *Latimore,* 378 Mass. 671 (1979), sets forth the standard under which we review the legal sufficiency of evidence in criminal cases. Evidence of guilt is adequate if "all the circumstances including inferences [that are not too remote according to the usual course of events] are of sufficient force to bring minds of ordinary intelligence and sagacity to the persuasion of [guilt] beyond a reasonable doubt"; and "the evidence, in its light most favorable to the Commonwealth, notwithstanding the contrary evidence presented by the defendant, is sufficient . . . to permit the jury to infer the existence of the essential elements of the crime charged." *Id.* at 676-677.

Thomas argues that the evidence provided insufficient proof of penetration. He points to a line of cases that hold, "When the evidence tends equally to sustain either of two inconsistent propositions, neither of them can be said to have been established by legitimate proof." *Commonwealth* v. *O'Brien,* 305 Mass. 393, 400 (1940). Thomas asserts that the jury, with equal reason, could have inferred from the victim's testimony that Thomas got off the victim without raping her because he became impotent or scared. He suggests that the doctor's testimony could not and did not exclude the reasonable possibility that the enlarged hymeneal opening and tears were caused by blunt instruments such as "screwdrivers, hammers, microphones, or soda bottles." We disagree.

The jury were entitled to infer penetration from the six year old victim's testimony that her "privacy" was made to feel bad as a result of Thomas's lying on top of her. The evidence of Thomas' lubrication of his and the victim's private parts further suggests an intent to penetrate. Moreover, the doctor's testimony permitted a reasonable inference that it was unlikely that injuries to the victim's hymen had been either self-inflicted or caused by a blunt instrument. The fact that evidence does not exclude "every other hypothesis" affects only its weight, not its sufficiency. *Commonwealth* v. *Casale,* 381 Mass. 167, 175 (1980). We think that the *Latimore* standard was met in this case.

3. Thomas argues that the victim's testimony that Thomas had on other occasions had sexual contact with her was unfairly prejudicial. He asserts that the victim's inability to specify the dates of these acts prevented the judge from determining the probative value of the testimony with respect to the act for which he was tried.

In most cases, evidence of past crimes cannot be admitted to prove commission of the crime charged. An exception to this rule, however, is that "when a defendant is charged with any form of illicit sexual intercourse, evidence of the commission of similar crimes by the same parties . . . , if not too remote in time, is competent to prove an inclination to commit the [acts] charged in the indictment . . . and is relevant to show the probable existence of the same passion or emotion at the time in issue." *Commonwealth* v. *King,* 387 Mass. 464, 470 (1982), quoting from *Commonwealth* v. *Bemis,* 242 Mass. 582, 585 (1922). The evidence of other similar crimes bears upon Thomas' mental state at the time of the crime charged in the indictment and serves to refute the possibility that the victim fabricated the incident complained of. See *Commonwealth* v. *Gallison,* 384 Mass. 184, 197 (1981). "Since this evidence had probative value, it was for the judge to determine whether its probative value outweighed the risk of prejudice." *Commonwealth* v. *King,* 387 Mass. at 472.

Here, testimony by the victim's mother showed that the other acts complained of could only have taken place during a period of less than a year before April, 1982, when the victim stayed at the Thomas home while her mother worked. Given the circumstances of this case, we find that the time frame thereby established removed the possibility that the other acts were "too remote in time." "Because the acts involved here formed a 'temporal and schematic nexus' . . . we cannot say that the judge abused his discretion," *Commonwealth* v. *King,* 387 Mass. at 472, in admitting them, with proper instructions, for consideration by the jury.

*Judgment affirmed.*