COMMONWEALTH *vs.* SHAUN R. CRIMMINS.

No. 96-P-0902.

Norfolk. September 17, 1998. - March 19, 1999.

Present: WARNER, C.J., PERRETTA, & LENK, JJ.

*Protective Order. Abuse Prevention. Practice, Criminal,* Required finding, Presumptions and burden of proof, Argument by prosecutor. *Evidence,* Prior misconduct, Credibility of witness, Prior conviction.

Evidence at the trial of a complaint for violating an extended restraining order, issued pursuant to G. L. c. 209A, was sufficient to allow the jury to infer that the defendant had been served with a copy of the extended order and that he, therefore, had knowledge of its contents. [492-494] WARNER, C.J., dissenting.

At the trial of a complaint for violation of a G. L. c. 209A order, the judge properly allowed the victim to testify regarding the defendant's past acts of violence against her, where he instructed the jury to consider that evidence only with respect to the nature of her relationship with the defendant and her mental state on the day of the alleged violation. [494-495]

At a criminal trial, error in allowing the victim on redirect examination to explain her prior convictions was harmless, where she had testified to the same information on direct examination. [495]

At the trial of a criminal case, nothing in the prosecutor's closing argument created a substantial risk of a miscarriage of justice. [495-496]

COMPLAINT received and sworn to in the Stoughton Division of the District Court Department on October 12, 1994.

On transfer to the jury session of the Dedham Division, the case was tried before *Kathleen E. Coffey,* J.

*Chris H. Mangos* for the defendant.

*Varsha Kukafka,* Assistant District Attorney, for the Commonwealth.

PERRETTA, J. On appeal from a conviction by a jury on a complaint charging him with violating an extended restraining order issued pursuant to G. L. c. 209A, the defendant claims that the Commonwealth failed to meet its burden of proving his knowledge of the existence of the outstanding order, that the

trial judge erred in allowing the victim to explain the circumstances of her criminal convictions, with which her credibility had been impeached, and that the prosecutor made improper and burden-shifting statements in his closing argument. We affirm the conviction.

1. *The evidence.* There was evidence to show that on June 21, 1993, the victim had obtained a restraining order against the defendant. On July 2, 1993, at a hearing which the defendant did not attend, the order was automatically extended to June 21, 1994.[1] On June 21, 1994, the order was further extended to June 21, 1995.

According to the victim, on October 4, 1994, she was driving with her fiancé when she looked in the rear view mirror of her car and saw the defendant driving directly behind her. She became terrified and sped away, driving through two red lights. The defendant followed closely behind the victim, almost on her rear bumper, for about seven minutes. Finally, he pulled his car alongside the victim's, passed her, and drove away.[2]

Over the defendant's objection, the victim was allowed to testify to her past relationship with the defendant and his prior acts of violence against her. She and the defendant met in 1989. At that time, the victim was a heroin addict and a prostitute. Early into their relationship, the defendant began to abuse the victim. He beat her with crutches he was then using as a result of an automobile accident. On another occasion, he inflicted beatings upon her throughout the course of an entire day, ripping out one of her toe nails and threatening to pour salt on the wound. In another episode, the defendant broke into a counseling session she was attending, beat her, and took money from her purse. When she once fled from the defendant in her car, a high-speed chase ensued. The victim crashed into a parked car and sustained serious injuries, including a ruptured lung and kidney as well as a broken collar bone.

Testifying on his own behalf, the defendant denied following the victim. Rather, he explained, he was driving to his home at 68 Walnut Street in West Bridgewater, where he lived with his parents, when he came upon and drove past the victim, all in a matter of seconds. He stated that, on that day, he "wasn't

---

[1]General Laws c. 209A, § 4, as inserted by St. 1990, c. 403, § 4, provides: "If the defendant does not appear at such subsequent hearing, the temporary orders shall continue in effect without further order of the court."

[2]The victim's account of the incident was corroborated by her fiancé.

aware" of any existing restraining order and that although he knew that the victim had obtained such an order in the past, he did not know that it was in effect on October 4, 1994.

2. *Sufficiency of the Commonwealth's evidence.* At the close of the Commonwealth's case, the defendant moved for a required finding of not guilty. He argued that the evidence was insufficient to show "any contact and violation" of the order, that taken in the light most favorable to the Commonwealth, the evidence showed only that a person identified as the defendant "was driving down a road." He abandons that claim on appeal and, instead, now argues that because the return of service made on the extended order did not specify the precise manner in which he was served, the Commonwealth's proof was insufficient to warrant a finding beyond a reasonable doubt that he had knowledge of the extended order.

In order to convict a defendant of violating a restraining order, the Commonwealth must prove beyond a reasonable doubt that the defendant had actual or constructive knowledge of the order and its terms and conditions. See *Commonwealth* v. *Collier*, 427 Mass. 385, 388 (1998); *Commonwealth* v. *Molloy*, 44 Mass. App. Ct. 306, 309-310 (1998). The Commonwealth can meet that burden with evidence of proof of service of the order by means reasonably calculated to reach the defendant. As stated in *Commonwealth* v. *Delaney*, 425 Mass. 587, 592 (1997), cert. denied, 118 S. Ct. 714 (1998): "Clearly, a showing that a defendant was served with a copy of a court order is strong evidence that a defendant had knowledge that certain conduct would not be permitted and could result in a criminal conviction."

To prove the defendant's knowledge of the order of June 21, 1994, the Commonwealth put in evidence the extended order and the return of service, which was signed by the serving police officer in a place for the officer's signature at the end of the form. The return has three open boxes which may be checked off by the serving officer to show the exact manner by which service was made. The boxes available to signify how service was made are (1) by delivering a copy in hand to the defendant; or (2) by leaving a copy at the defendant's last and usual address "as shown in this order," which was identified in the extended order as 68 Walnut Street, West Bridgewater; or (3) by other means which, if applicable, are to be described on

the return.[3] The officer did not place a check mark in any of those boxes.[4]

There is no question that the evidence was sufficient to show that the defendant was in fact served. See note 3, *supra.* Rather, the question is whether the Commonwealth's evidence was sufficient to show that service was made in a manner reasonably calculated that notice of the extended order would reach him. The answer to that question turns on whether it can be inferred reasonably from the extended order and the officer's signed return that service was made either by delivering the extended order in hand to the defendant or by leaving it at his last and usual address, as appearing in the extended order.[5] If, on the

[3]There is a fourth box which is to be checked when the officer is unable to make service. Because the officer stated on the return that she made service of the extended order on June 21, 1994, at 3:08 P.M., the absence of a check in the fourth box is of no consequence.

[4]Although an incomplete return "does not affect the validity of the service," Mass.R.Civ.P. 4(f), 365 Mass. 733 (1974), the officer should have used more care in completing the form.

[5]We do not think that it is the Commonwealth's burden to prove that the defendant's address appearing on the extended order was in fact his address at the time service was made. Once the Commonwealth presents evidence that service was made, it is open to the defendant to show that he never received a copy because he resided at an address other than that listed on the extended order, and that, therefore, the jury should not infer his knowledge of its contents.

Even assuming, however, that the Commonwealth did have such a burden, our conclusion, that its evidence was sufficient, would be no different for the following reason. The Commonwealth and the defendant agree that, because the defendant did not make this argument (insufficient proof of service and, therefore, of knowledge) on the motion for a required finding of not guilty in the trial court, we should review the claim to prevent a substantial risk of a miscarriage of justice. "[F]indings based on legally insufficient evidence are inherently serious enough to create a substantial risk of a miscarriage of justice." *Commonwealth* v. *McGovern,* 397 Mass. 863, 867-868 (1986).

Under that standard of review, our analysis of the defendant's argument would not be limited to the Commonwealth's case but would be based upon all the evidence. See *Commonwealth* v. *Eason,* 43 Mass. App. Ct. 114, 133-134 (1997) (Armstrong, J., dissenting), *S.C.,* 427 Mass. 595 (1998), in which Justice Armstrong points out, based upon cases therein cited, that review of a conviction under the "substantial risk of a miscarriage of justice standard" turns on an examination of the *entire* record. An examination of the entire record shows that the defendant testified that, although he was unaware of the fact that the prior order had been extended, he resided with his parents at the same address as that set out in the extended order, 68 Walnut Street, West Bridgewater. The record further shows that the defendant made no claim in

other hand, and as the dissent concludes, it also can be inferred reasonably that service was made by "other" means not described on the return, the Commonwealth's proof fails for lack of evidence showing that the other means were reasonable.

We do not think that the absence of a check in any one of the three applicable boxes gives rise to a reasonable possibility that service was made by means other than delivering the extended order to the defendant in hand or by leaving it at his last and usual residence. General Laws c. 209A, § 7, as inserted by St. 1990, c. 403, § 8, requires the "appropriate law enforcement agency, . . . unless otherwise ordered by the court," to serve a copy of the extended order upon the defendant. As held in *Zullo* v. *Goguen*, 423 Mass. 679, 680-681 (1996): "The words, 'unless otherwise ordered by the court,' are significant. When the appropriate law enforcement agency has made a conscientious and reasonable effort to serve the statutorily specified documents on the defendant, but has nevertheless failed, the agency should promptly notify the court so that a judge, if satisfied after a hearing that an appropriate effort has been made, may order that service be made by some other identified means reasonably calculated to reach the defendant." See Mass. R.Civ.P. 4(d)(1), as amended, 370 Mass. 918 (1976).

The extended order and its return show that the order was issued at 11:36 A.M., and was served three and one-half hours later, at 3:08 P.M. We do not think it reasonable to infer that an order for substituted service could have been obtained, consistent with the procedures described in *Zullo* and Mass. R.Civ.P. 4(d)(1), within that time frame. Nor do we think it reasonable to infer that the officer, with knowledge of the defendant's address (compare *Zullo*, 423 Mass. at 680, where the officers did not know defendant's address), nonetheless would choose to go before a judge and claim due and diligent effort in order to obtain an order for service by "other" means. Further, we do not think it reasonable to infer that a judge would find that due and diligent effort had been made and that service by means "other" than leaving the order at the address therein identified were authorized.

Because the return shows that service was in fact made, and

his closing argument that, because of the absence of a check mark in any box on the return, the jury should not infer that he had knowledge of the order, he did not make any request for jury instructions on the issue, and he took no objection to the instructions given.

because the only reasonable inference to be drawn is that the method of that service had to be either by delivering a copy in hand to the defendant or by leaving a copy at his last and usual address as appearing on the extended order, we conclude that the evidence was sufficient to allow the jury to infer that the defendant had been served with a copy of the extended order on June 21, 1994, by means reasonably calculated to reach him, and that he, therefore, had knowledge of its contents.[6] See *Commonwealth* v. *Delaney*, 425 Mass. at 592.

3. *Evidence of prior bad acts.* In allowing the victim to testify to the defendant's past acts of violence against her, the trial judge limited that evidence to the issues of the nature of her relationship with the defendant and her mental state on October 4, 1994. If viewed in isolation, the conduct with which the defendant was charged might seem a chance or inadvertent encounter to which the victim overreacted. "Evidence of prior misconduct may be received, however, if it illuminates a pattern or course of conduct by the defendant." *Commonwealth* v. *Chartier*, 43 Mass. App. Ct. 758, 760 (1997), citing *Commonwealth* v. *Odell*, 34 Mass. App. Ct. 100, 103 (1993). See

---

[6]Citing *Commonwealth* v. *Ferguson*, 384 Mass. 13, 18 (1981), and *Commonwealth* v. *Baptista*, 32 Mass. App. Ct. 910 (1992), the dissent seems to take the position, *post* at 496-497, that the defendant's knowledge of the extended order cannot be inferred reasonably because that inference is itself based upon the inference that the defendant was served either by delivering a copy of the order to him in hand or by leaving it at his last and usual address. An inference is not made unreasonable simply because it proceeds from a reasonable inference. See *Commonwealth* v. *Dostie*, 425 Mass. 372, 375-376 (1997). Rather, an inference is unreasonable if it is "too remote according to the usual course of events." *Commonwealth* v. *Latimore*, 378 Mass. 671, 676 (1979). *Commonwealth* v. *Russell*, 46 Mass. App. Ct. 307, 308-309 (1999). The inferences rejected in *Ferguson* were found unreasonable because each of those deemed necessary to a finding of guilt beyond a reasonable doubt also gave support to many other possible and alternative inferences. In *Baptista*, the court began its analysis with citation to *Ferguson* and then concluded that the jury reasonably could infer from evidence of the defendant's fingerprint inside a closed and locked vending machine that, because the interior of the machine was not available to members of the public, the print was left on the coin box at the time of the crimes there in issue, breaking and entering and the larceny.

In our view, the dissent fails to take into account that here the evidence shows that the officer knew the defendant's address and that she served the extended order within three and one-half hours of its issuance. Instead, the dissent looks only to the absence of check marks to draw an inference against the Commonwealth that service might have been made by some "other" means, an inference that is unreasonable.

*Commonwealth* v. *Snell,* 428 Mass. 766, 777-778 (1999). We see no error in the trial judge's determination that the evidence was admissible.

4. *Explanation of prior convictions.* After the defendant impeached the victim's credibility with evidence of her prior convictions in 1986, 1988, and 1989, for numerous larcenies, receiving stolen property, larceny of a motor vehicle, and being a common night walker, the prosecutor, on redirect, asked the victim: "At that time when you were charged and convicted for stealing, these theft crimes, was your life different then than it is now?" The victim, over the defendant's objection, related that at the time of those crimes, she had been addicted to heroin and would have done anything to get the drug.

Assuming without deciding that the victim's explanation of her lifestyle at the time of her convictions ran afoul of the general rule that "when a record of a witness's conviction of a crime has been introduced to impeach [her], the conviction must be left unexplained," *Commonwealth* v. *McGeoghean,* 412 Mass. 839, 843 (1992), and cases therein cited, we think any error was harmless. The victim testified on direct examination, without objection, that she had been in trouble in the past, that she had been addicted to heroin, that she had been a prostitute, and that she had done many things as a means to obtain heroin.

5. *Closing argument.* In making his closing argument to the jury, the prosecutor made two statements about which the defendant complains for the first time. In arguing that the victim was credible, the prosecutor directed the jury's attention to the victim's demeanor before them and stated that, based upon their observations, they could find that she was terrified while sitting across from the defendant and testifying against him. We see nothing improper in the comment, see *Commonwealth* v. *Traylor,* 43 Mass. App. Ct. 239, 246 (1997), let alone a substantial risk of a miscarriage of justice. Nor is such a risk found in the prosecutor's rhetorical question, "Who's the burden on in this case where there's a restraining order . . . ?" Although the prosecutor's choice of words was poor, we think that when the question is read in context, it is clear that he was not shifting the Commonwealth's burden of proof to the defendant. Rather, he was arguing that where there is a restraining order in effect, it is the defendant's obligation to refrain from making any contact with the victim. Moreover, the trial judge thoroughly instructed the jury that the defendant was presumed innocent,

that he must be found not guilty unless the Commonwealth produces evidence of his guilt beyond a reasonable doubt, and that the Commonwealth's burden to produce such evidence "never shifts." See *Commonwealth* v. *Donovan,* 422 Mass. 349, 358 (1996).

*Judgment affirmed.*

WARNER, C.J. (dissenting in part). Elaborating on Justice Holmes's now familiar maxim, in a recent opinion of this court, Justice Laurence stated that, like great cases and hard cases, sometimes "[s]ympathetic cases make bad law." *Hotchkiss* v. *State Racing Commn.*, 45 Mass. App. Ct. 684, 685 (1998), citing *Northern Sec. Co.* v. *United States,* 193 U.S. 197, 400 (1904) (Holmes, J., dissenting). This case presents a factual scenario which, *if the victim's testimony is believed,* may be fairly characterized as at once tragic and repugnant. Nonetheless, although I agree with much of the majority's disposition of this appeal, I cannot agree that the Commonwealth met its burden of proof regarding the notice element of the G. L. c. 209A violation. Accordingly, I respectfully dissent.

As the majority recognize, service, whatever its form, must be accomplished in a manner "reasonably calculated" to reach the defendant. *Commonwealth* v. *Delaney,* 425 Mass. 587, 591 n.7 (1997), cert. denied, 118 S. Ct. 714 (1998). Thus, when service is performed in hand or at the defendant's last and usual address, a jury is permitted to infer that the defendant received the order. See *id.* at 589-592.

However, if the jury has *no* information as to how service was performed, there is nothing from which they can infer that the defendant actually received, and thus actually knew of, the order. Thus, in the present case, although perhaps a rational jury could infer that the extension had been served in *some* manner, the absence of any information pertaining to the four possible methods of the attempted service left the jury to speculate whether service had been performed in a manner reasonably calculated to reach the defendant. In the absence of any additional evidence tending to show knowledge of the extension, the jury could not infer, beyond a reasonable doubt, that the defendant knew the restraining order was in effect.

The majority conclude that we may properly infer that the

defendant was served either in hand or at his last and usual address. It is axiomatic that when reviewing the sufficiency of the evidence, we may not indulge in speculation, nor may we (or a jury) pile inference upon inference. See *Commonwealth* v. *Ferguson*, 384 Mass. 13, 18 (1981); *Commonwealth* v. *Baptista*, 32 Mass. App. Ct. 910 (1992). Yet, the majority's opinion improperly rests upon a series of faulty consecutive assumptions, each an inference from the previous, in order to support an ultimate finding that the defendant had knowledge of the existence and terms of the restraining order.

Essentially, the majority reason that because G. L. c. 209A, § 7, requires that service be made upon the defendant "unless otherwise ordered by the court," and because under these circumstances,[1] obtaining a court order authorizing service by "other means" would have been unlikely, we may infer that service was not made by such other means. In turn, because we may assume that service was not made by other means, we may next infer that service was made either in hand, or by delivery at the defendant's last known address, since these two choices are the only choices left on the (incomplete) return of service. Since either of these two methods can be probative of knowledge, we may finally infer, *beyond a reasonable doubt*, that the defendant knew of the existence and terms of the order.[2]

The majority's analysis is premised upon any of three foundational assumptions. First, the majority assume that an order for substitute service could not be obtained in the approximately three and one-half hour time span between the issuance of the order and its service. I am not prepared to accept as fact the unavailability of a trial court judge to issue an order for substituted service, even under these circumstances.

The majority also assume both that the officer, having knowledge of the defendant's address, would not request an order for substitute service, and also that a judge would not is-

---

[1]That is, that the order was issued at 11:36 A.M., and service of the order was made at 3:08 P.M. Thus, by the majority's curious analysis, a court order authorizing substitute service could not have been obtained in so short a time, and in any event, an officer would not make, and a judge would not grant, such a request.

[2]The majority, *ante* at 494 n.6, read this dissent as an argument that knowledge of the order cannot be inferred from a preceding inference that the defendant was served either in hand or at his last and usual address. In truth, I take issue with the entire elaborate chain of assumptions which the majority make in order to arrive at an ultimate finding of knowledge.

sue such an order. Casting aside the utter lack of evidence from which a jury could make either of these inferences, this analysis remains at best incomplete, in that it is premised upon an additional unsupported assumption that the officer actually followed statutorily prescribed procedure, i.e., that if the officer chose to attempt substitute service, she would go before a judge and request authorization.[3]

In short, I believe that this series of consecutive assumptions is simply too remote, and too speculative, to serve as a foundation for an ultimate finding of knowledge. See *Commonwealth v. Latimore,* 378 Mass. 671, 677-678 (1979) ("it is not enough for the appellate court to find that there was some record evidence, however slight, to support each essential element of the offense; it must find that there was enough evidence that could have satisfied a rational trier of fact of each such element beyond a reasonable doubt").

Aside from the speculative nature of the majority's reasoning, the analysis itself is not applicable to these facts. The issue which we address is whether a rational *jury* could have found the essential elements of the crime beyond a reasonable doubt. See *Commonwealth v. Robicheau,* 421 Mass. 176, 181 (1995). Needless to say, inferences may be drawn only from the evidence presented at trial. See *Commonwealth v. Collier,* 427 Mass. 385, 389 (1998).

Here, there was no evidence presented to the jury concerning the procedural provisions of G. L. c. 209A, § 7. Pertaining to the knowledge element, the judge instructed the jury that the Commonwealth must prove "that the defendant knew that the pertinent terms of the order were in effect either by having received a copy of the order or by having learned of the terms of the order in some other way."[4] There was no mention of the procedure prescribed by G. L. c. 209A, § 7, nor was there any mention of *Zullo v. Goguen,* 423 Mass. 679 (1996), to which the majority cites. As a result, the jury simply had no opportunity to engage in the analysis which the majority now suggest.

In sum, because there is no evidence in the record from which

---

[3]It seems peculiar to argue that we may assume that an officer may be trusted to follow every nuance of statutorily prescribed procedure, since the reason for the existence of this issue on appeal is the fact that the officer failed to complete the return.

[4]The judge also gave general supplemental instructions on knowledge and intent.

it may be inferred that service was made in a manner reasonably calculated to reach the defendant, and there is no additional evidence demonstrating knowledge, there is nothing from which knowledge may be inferred beyond a reasonable doubt, and, therefore, I would reverse the judgment.