COMMONWEALTH *VS.* LEONARDO VEGA.

No. 99-P-2108.

Hampden. January 10, 2002. - March 19, 2002.

Present: BROWN, KASS, & KANTROWITZ, JJ.

*Practice, Criminal,* Sentence, Challenge to jurors, Instructions to jury. *Evidence,* Inference. *Jury and Jurors.*

At the trial of an indictment charging the defendant with being an accessory before the fact to armed robbery, the judge did not err in imposing a sentence of from nine to twelve years that was within the statutory boundaries and also within the sentencing guidelines, where the judge properly considered that a death resulted from the armed robbery to which the defendant had been an accessory as a factor in assessing the gravity of the crime. [250-251]

At a criminal trial, the judge did not wrongly allow a peremptory challenge based on membership in an ethnic group. [251-252]

At a criminal trial, the judge did not err in instructing the jury on the use of inferences, where there was little danger that the jury might engage in attenuated reasoning. [252-253]

INDICTMENTS found and returned in the Superior Court Department on September 11, 1998.

The cases were tried before *C. Brian McDonald,* J.

*David H. Mirsky* for the defendant.

*Bethany C. Lowe,* Assistant District Attorney, for the Commonwealth.

KASS, J. On appeal, the defendant argues that the trial judge erred by enhancing the sentence he imposed for the crime of which the jury convicted the defendant by taking into account a crime of which the defendant had been acquitted. The defendant also claims the judge wrongly allowed a peremptory challenge based on membership in an ethnic group and made a significant error in instructing the jury. We affirm.

*Facts.* From the evidence, the jury that heard the case in

Superior Court could have found the following. Leonardo Vega, the defendant, masterminded an armed robbery of a "drug spot on Chestnut Street" in Holyoke. He provided handguns to three of four men who were the actual assault team. The defendant stayed at home. During the robbery, which occurred July 23, 1998, Leonardo DeJesus, one of the four robbers, shot and killed Luis "Pitola" Legaretta, a small time drug dealer. The jury returned a verdict of guilty on an indictment of accessory before the fact to armed robbery, but a verdict of not guilty on an indictment of accessory before the fact to murder.

1. *The sentence.* When imposing sentence, a judge may not increase the severity of the sentence based on an intuitive sense that the defendant has committed a greater crime, or a crime other than that of which he has been found guilty. *Commonwealth* v. *Coleman*, 390 Mass. 797, 804 (1984). *Commonwealth* v. *McCravy*, 430 Mass. 758, 767 (2000). *Commonwealth* v. *Howard*, 42 Mass. App. Ct. 322, 326-327 (1997). During the sentencing proceedings, both the prosecution and the defense referred to the proposed sentencing guidelines grid that accompanies the felony and misdemeanor master crime list published in 1999 by the Massachusetts Sentencing Commission. Defense counsel thought application of the guidelines would produce a sentence of seven years. Under the armed robbery statute, G. L. c. 265, § 17, the sentencing range is "for life or for any term of years."[1] The judge imposed on the defendant a sentence of nine to twelve years in State prison. This was comfortably within statutory boundaries and also within the guidelines. We do not review the judge's discretion but inquire only whether the sentence was tainted by error of law. *Commonwealth* v. *McCravy*, 430 Mass. at 767.[2]

In so doing, the judge remarked it was a "significant factor" not "adequately reflected in the guidelines" "that a death resulted from the armed robbery." "You were well aware," the judge said to the defendant at the sentencing, "of what was going to happen with these guns, at least to the extent of the robbery, if not the ultimate death of Mr. Legaretta."

[1] General Laws c. 274, § 2, provides that an accessory before the fact shall be punished in the same manner as the principal felon.

[2] The defendant appealed his sentence to the Appellate Division of the Superior Court, which affirmed it. See G. L. c. 278, §§ 28A-28C.

We think it distorts the judge's comments to read them as signifying a de facto sentence for murder. The judge recognized that the jury had acquitted the defendant of causing the "ultimate death" of the victim Legaretta. Contrast *Commonwealth* v. *McCravy*, 430 Mass. at 767. That the defendant had not counseled or desired the death of the victim Legaretta (as the jury implicitly found) does not relieve the defendant of responsibility for having set in motion a chain of events in which death was a distinct possibility. That would be a factor which the judge could consider in assessing the gravity of the armed robbery to which the defendant had been an accessory, and this would be so even if death had not, in fact, resulted. It is quite unlike the sentencing judge's excoriation of the defendant because of prior crimes that preceded the sentencing hearing in *Commonwealth* v. *Lewis*, 41 Mass. App. Ct. 910, 911 (1996).

2. *The peremptory challenges.* Of the fourteen jurors who had been seated, four had Hispanic surnames. In his first set of peremptory challenges, the prosecutor undertook to remove four jurors from the panel, one of whom, Serrano, had a Hispanic surname. Defense counsel questioned whether the prosecutor might be thinning an ethnic group from the jury panel, in violation of *Commonwealth* v. *Soares*, 377 Mass. 461, 488 (1977), cert. denied, 444 U.S. 881 (1979). See *Batson* v. *Kentucky*, 476 U.S. 79, 89 (1986).

With three jurors of apparent Hispanic connection still on the panel, and the peremptory challenge to a juror with a Hispanic surname having been one out of four peremptory challenges, the judge acted within his discretion when he said, "I don't believe there's any problem to this point." Although challenge of "a single prospective juror within a protected class could . . . constitute a prima facie case of impropriety," *Commonwealth* v. *Fryar*, 414 Mass. 732, 738 (1993), *S.C.*, 425 Mass. 237, cert. denied, 522 U.S. 1033 (1977), the challenge of juror Serrano fell well short of purging the jury of its only member of an identifiable group, as in *Commonwealth* v. *Calderon*, 431 Mass. 21, 23 (2000), and *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. 547, 552-553 (1981).

During the second round of peremptory challenges, the

prosecutor again directed a challenge at a juror with a Hispanic surname, Vasquez. This time, the judge, sensing that the government might be seeking to remove a member of a discrete group, asked the prosecutor for an explanation. The prosecutor thought the juror "very tentative," "quite unsure of herself," "nervous and giggly"; she had said that she had to drive three times a week to *Framingham*, a confusion of her destination, the nearer town of *Farmington*, Connecticut. Vasquez's mind, the prosecutor suggested, was not up to coping with the relative subtlety of crimes such as accessory before the fact and felony murder. The judge accepted the challenge and excused Vasquez.

The reasons that the prosecutor offered, if less than dynamite, were better than the patently unconvincing ones of widowhood and smirk in *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. at 551-553, and the diaphanous ones proffered in *Commonwealth* v. *Calderon*, 431 Mass. at 28. The judge, regrettably, failed to make the "definitive pronouncement" about what he regarded as the bona fide reasons for exercise of the facially suspect challenge, *id.* at 26, but we may infer he agreed with the prosecutor's assessment of the possibly marginal attentiveness and acuity — at least on that day — of juror Vasquez. Contrast *Commonwealth* v. *Futch*, 38 Mass. App. Ct. 174, 177 (1995). Procedural error in ruling on peremptory challenges is not a per se ground for reversal. *Id.* at 27. In resolving whether the reasons for a peremptory challenge are kosher or sham, the trial judge is entitled to substantial deference. *Commonwealth* v. *Valentin*, 420 Mass. 263, 269 (1995). *Commonwealth* v. *DiMatteo*, 12 Mass. App. Ct. at 552. But see *Commonwealth* v. *Futch*, *supra* at 177-178. On the record, the judge's call on juror Vasquez was supportable. We may add that the defense lamentation about removal of jurors of apparent Hispanic connection is both disingenuous and overdrawn. In the second round, defense counsel exercised a peremptory challenge of a juror named Souza, and a juror named Quinones was seated. Ultimately, the jury that heard the case tried had the same number of jurors with a Hispanic surname as before either lawyer had begun peremptory challenges.

3. *Jury instructions.* In the course of the customary talk to the jury about the definition and use of inferences, the judge also

told the jurors: "You may draw inference upon inference if, at the base, there are facts or — a fact or facts to be — that have been proved beyond a reasonable doubt." Defense counsel at trial did not object to that instruction, but appellate counsel argues that the quoted passage misstated the law and misled the jury, such that there was a substantial risk of a miscarriage of justice. See *Commonwealth* v. *Freeman*, 352 Mass. 556, 563-564 (1967).

That a conviction may not rest on the piling of inference on inference is a hardy chestnut of our case law. *Commonwealth* v. *Mandile*, 403 Mass. 93, 94 (1988). *Commonwealth* v. *Reeves*, 434 Mass. 383, 390 (2001). In its application, the proposition is more qualified. An inference is not improper just because it builds on an inference, if the primary inference is reasonable. *Commonwealth* v. *Dostie*, 425 Mass. 372, 375-376 (1997). *Commonwealth* v. *Crimmins*, 46 Mass. App. Ct. 489, 494 n.6 (1999). Each secondary inference must also be a logical and reasonable conclusion from the prior inference. *Commonwealth* v. *Dostie*, *supra* at 376. It is a speculative inference that may not build on a prior inference, *id.* at 376, any more than that a primary inference may rest on speculation. *Ibid.* What is of the essence is that an inference not be "remote according to the usual course of events" from the evidence or subsidiary inference on which it is based. *Commonwealth* v. *Latimore*, 378 Mass. 671, 676 (1979). *Commonwealth* v. *Crimmins*, *supra* at 449 n.6.

As a statement of the law, the judge's instruction on inference was correct, especially as the judge also said to the jury, "I urge you to re-examine the conclusion you've drawn and the string of inferences to be sure the string of inferences has not been drawn too thin," and then added, "Your verdict must not be based upon suspicion, conjecture, assumption, presumption, or surmise." One may doubt whether it is helpful to jurors to instruct them that they may draw inferences from inferences. Description of an inference as a logical deduction from a fact may be the better stopping place. In the instant case there was little danger that the jury might engage in attenuated reasoning. There was solid evidence of the defendant's role in planning the robbery and providing the weaponry.

*Judgment affirmed.*