A jury convicted the defendant, Kristen Woolf, of three counts of violation of a harassment prevention order and one count of assault and battery. On appeal, she asserts there was insufficient evidence to support her convictions of violating a harassment prevention order and that various trial errors created a substantial risk of a miscarriage of justice warranting reversal of all of the convictions. We affirm.
Background. The jury could have found the following facts based on the evidence presented at trial. The defendant and the victim lived in the same apartment building, and a dispute between the victim and another woman over a scratch on a car resulted in a physical altercation involving numerous individuals, including the defendant. During that incident, the defendant punched the victim, causing her lip to bleed.
Based in part on that incident, the victim sought and received a harassment prevention order against the defendant pursuant to G. L. c. 258E, § 9. That order required the defendant to stay fifty yards away from the victim when not at the apartment complex and prohibited the defendant from contacting or abusing the victim. The defendant was convicted of violating that order on three separate dates: (1) on August 5, 2015, the defendant was behind the apartment building when the victim and her boy friend entered the parking lot, and the defendant yelled, "You dumb bitch, you can't even drive because you can't read" road signs; (2) on November 17, 2015, the defendant and victim both waited at the school bus stop[2] when the defendant and her friends clapped their hands at the victim, and after the victim turned and looked at the defendant, she said, "What, bitch?"; and (3) on March 2, 2016, the defendant and her friends again were at the bus stop with the victim, and the defendant walked past the victim while laughing and clapping her hands at her.[3]
Discussion. 1. Sufficiency of the evidence. The defendant contends that there was insufficient evidence to support her conviction stemming from the March 2 incident. Further, the defendant cites inconsistencies within the testimony of the victim and her boy friend regarding the dates of incidents underlying the violations of the harassment prevention order. Because of this, she asserts, if one violation is overturned, all three must be overturned because the evidence does not clearly establish which incident took place on which date. Since we conclude that there was sufficient evidence to support the conviction of the March 2 incident, we need not reach the second question.
When the sufficiency of the evidence is challenged, we must determine whether, after viewing the evidence in the light most favorable to the Commonwealth, " 'any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt' (emphasis in original)." Commonwealth v. Latimore, 378 Mass. 671, 677 (1979), quoting from Jackson v. Virginia, 433 U.S. 307, 318-319 (1979). To support a conviction of violation of a harassment prevention order, four things must be proven: (1) the victim obtained a harassment prevention order against the defendant; (2) the order was in effect at the time of the violation; (3) the defendant knew that the order was in effect at time of the violation; and (4) the defendant violated the order. See Commonwealth v. Delaney, 425 Mass. 587, 595 (1997).
The issue before us is whether, when viewed in the light most favorable to the Commonwealth, the evidence of the defendant laughing and clapping at the victim was sufficient to establish "contact" in violation of the harassment prevention order. "Our cases generally interpret 'contact' broadly; there are many ways to achieve a communication." Commonwealth v. Basile, 47 Mass. App. Ct. 918, 919-920 (1999). Contact need not be verbal. See Commonwealth v. Butler, 40 Mass. App. Ct. 906, 907 (1996) (defendant contacted victim by anonymously sending flowers); Commonwealth v. Crimmins, 46 Mass. App. Ct. 489, 490 (1999) (defendant made contact by following victim's car); Basile, supra (defendant jumping and waving at victim from down the street constituted contact). Accordingly, we conclude that the victim's testimony about the defendant laughing and clapping at her was sufficient to support the conviction of the March 2 violation. What weight to give this testimony was a question properly left in the hands of the jury. See Commonwealth v. Martin, 467 Mass. 291, 313-314 (2014). Because of this, the three distinct violations of the harassment prevention order were all supported, and any minor confusion on the victim's part regarding which incident occurred on which date[4] did nothing to undermine the verdicts.[5]
2. Substantial risk. The defendant further asserts that four trial errors created a substantial risk of a miscarriage of justice with respect to all of her convictions: (1) the victim referred to prior bad acts of the defendant; (2) the judge failed to sua sponte strike testimony after sustaining defense objections; (3) the judge failed to properly cure the prejudice stemming from failure to strike testimony with her instructions; and (4) the Commonwealth posed improper questions in its closing argument. In reviewing the defendant's claims, we consider whether there was an error made and, if so, whether it created a substantial risk of a miscarriage of justice such that the court is left "with a serious doubt that the defendant['s] guilt had been fairly adjudicated." Commonwealth v. Amirault, 424 Mass. 618, 646-647 (1997).
As it relates to the first three asserted errors regarding prior bad acts testimony and the judge's response, we discern no error and therefore no substantial risk of a miscarriage of justice. The victim struggled to limit her testimony to the three incidents charged, more than once referencing additional incidents between her and the defendant or how there were "so many" other incidents than those charged. The judge sustained defense objections to those statements and instructed the jury to disregard them, and during her jury instructions, the judge reiterated the purpose of objections to evidence and instructed the jury to reach their decision based on what was admitted as evidence. See Commonwealth v. Kozec, 399 Mass. 514, 517 (1987) (jury is presumed to have "[a] certain measure of ... sophistication"). When asked by the defendant to strike testimony after sustaining objections, the judge did so. As to other sustained objections, the judge was under no obligation to interject, sua sponte, and strike the challenged testimony from the record after sustaining the defendant's objections. See Commonwealth v. Pimental, 54 Mass. App. Ct. 325, 330 (2002) ("[T]he trial judge's responsibility to conduct a fair trial does not require her to act as an attorney [for the defendant]"). Here, the judge properly addressed the issues that may have arisen from references to prior bad acts by the defendant, and as there was no error, there was no substantial risk of a miscarriage of justice. See Amirault, 424 Mass. at 646-647.
Finally, we agree with the defendant that there were portions of the Commonwealth's closing argument that were improper, yet after careful consideration, we conclude they did not create a substantial risk of a miscarriage of justice. "In determining whether an argument was improper we examine the remarks 'in the context of the entire argument, and in light of the judge's instructions to the jury and the evidence at trial.' " Commonwealth v. Gaynor, 443 Mass. 245, 273 (2005), quoting from Commonwealth v. Viriyahiranpaiboon, 412 Mass. 224, 231 (1992).
The defendant asserts three errors in the prosecutor's closing argument. The Commonwealth concedes error in one of the challenged statements.[6] Regarding the following questions posed to the jury, however, the Commonwealth contests the defendant's asserted errors. First, the defendant challenges the prosecutor's statement that "[the defendant] tells a police officer to fuck off. Her words, not mine. Don't you think she's capable of calling [the victim] a bitch at the bus stop?" Second, the defendant challenges the statement that "[i]f she yells at a police officer on the phone, who is just doing his job, and threatens him and says I'm going to take out harassment charges against the Middleborough [p]olice [d]epartment, don't you think she's capable of violating a court order?"
"Prosecutors must limit the scope of their closing arguments to facts in evidence and the fair inferences that may be drawn therefrom." Commonwealth v. Valentin, 474 Mass. 301, 309 (2016) (quotation omitted). Just as the prosecutor's statement that fell outside of the record was inappropriate, the repeated suggestions that the defendant's prior bad acts made her more likely to have committed the crimes charged called on the jury to make improper inferences based on the defendant's propensity for wrongdoing. See Commonwealth v. Woollam, 478 Mass. 493, 500 (2017) (evidence may not be used to establish defendant's propensity to commit crime charged). We agree with the defendant that the statements were improper. However, considering the judge's instruction that opening statements and closing arguments are not evidence and the ample evidence presented to support the convictions, we conclude that the errors were not so significant as to leave us "with a serious doubt that the defendant['s] guilt had been fairly adjudicated." Amirault, 424 Mass. at 647.
Judgments affirmed.

The defendant did not have children of her own but would regularly look after neighbors' children at the bus stop.

The defendant never spoke to the victim during the March 2 incident.

Any risk of confusion was alleviated by the defendant's request that each verdict slip contain a date of the offense.

In accordance with model jury instructions, the judge properly instructed the jury that it was their duty to decide questions of fact, including whether to believe witnesses and whether the witnesses' memories are accurate. See Instruction 2.260 of the Criminal Model Jury Instructions for Use in the District Court (2009).

The Commonwealth concedes that it was improper for the prosecutor to characterize the defendant as a "ringleader" who organized a group of people to harass the victim. There was no evidence to support the Commonwealth's labeling of the defendant as the ringleader.