The defendant, Eliezer Montanez, appeals from convictions after trial by a Superior Court jury of attempted extortion, G. L. c. 265, § 25, and receiving stolen property, G. L. c. 266, § 60.[2] Concluding that the motion judge properly denied the defendant's motions to suppress a detective's eyewitness identification of him and to suppress statements made in an interview at the police station, and further discerning no error in sentencing, we affirm.
1. Motion to suppress identification. On appeal from a decision denying a motion to suppress, "[w]e accept all of the judge's factual findings" unless clearly erroneous, Commonwealth v. Galipeau, 93 Mass. App. Ct. 225, 226 (2018), and we "review without deference the judge's application of the law to the facts as found." Commonwealth v. Johnson, 473 Mass. 594, 602 (2016).
An out-of-court identification obtained by law enforcement must be suppressed where the defendant demonstrates that "the procedures employed were so unnecessarily suggestive and conducive to irreparable misidentification as to deny the defendant due process of law." Commonwealth v. Cavitt, 460 Mass. 617, 632 (2011), quoting from Commonwealth v. Miles, 420 Mass. 67, 77 (1995). Generally, one-on-one showup identifications "are viewed as inherently suggestive." Commonwealth v. Pearson, 87 Mass. App. Ct. 720, 723 (2015), quoting from Commonwealth v. Austin, 421 Mass. 357, 361 (1995).
Here, contrary to the defendant's argument, the motion record does not establish the existence of a one-on-one showup identification of the defendant by Detective Nathan Bowler at the police station. Rather, the identification was the product of an unplanned encounter; there was no evidence that anything was done by the police to direct Detective Bowler to identify or even notice the defendant while Detective Bowler happened to be sitting at his desk. See Cavitt, 460 Mass. at 632 (no one-on-one showup where identifying witness "simply looked around as he exited the detective bureau and observed the defendant's photograph on [a] screen"). There is no evidence that anyone told Detective Bowler the defendant was coming in to the station or was even a suspect; he was never asked to identify the defendant as the driver nor was there any plan or reason for him to do so at the time. Detective Bowler was familiar with the defendant, see Johnson, 473 Mass. at 601-602, and the motion judge could credit that he initially recognized the defendant as the driver and then later identified him by name without improper influence.[3] See Commonwealth v. Neves, 474 Mass. 355, 360 (2016), quoting from Commonwealth v. Moon, 380 Mass. 751, 756 (1980) ("The determination of the weight and credibility of the testimony is the function and responsibility of the judge who saw and heard the witnesses"). Cf. Commonwealth v. Rivers, 93 Mass. App. Ct. 120, 125 (2018) (rejecting defendant's claim that victim's review of police report naming defendant as one of assailants influenced victim's memory of who attacked him). Viewing the totality of the circumstances, see Galipeau, 93 Mass. App. Ct. at 227, the identification was not "the product of unnecessarily suggestive police procedures." Cavitt, supra.
For that reason, the identification was admissible. See Cavitt, 460 Mass. at 632, quoting from Commonwealth v. Watson, 455 Mass. 246, 251 (2009) ("Where an identification procedure is not impermissibly suggestive, a pretrial identification is admissible without any further showing"). Any question as to its reliability -- including Detective Bowler's recognition of the defendant as the driver despite his initial description of the suspects as three "dark-skinned or African-American males"[4] -- was for the jury to consider at trial. See Commonwealth v. Meas, 467 Mass. 434, 443 (2014) (conflicting testimony as to suspect's identity "was a matter to be pursued at trial and one for the jury to resolve"); Galipeau, 93 Mass. App. Ct. at 230 ("[A]ny equivocation in [the witness's] initial identification went to the weight of the evidence, not its admissibility"). The motion judge properly denied suppression of the identification.
2. Motion to suppress statements. In reviewing the denial of the defendant's motion to suppress his statements to Detective Sergeant Joseph Murray at the police station, we likewise "accept the judge's subsidiary findings of fact absent clear error 'but conduct an independent review of [her] ultimate findings and conclusions of law.' " Commonwealth v. Cawthron, 479 Mass. 612, 616 (2018), quoting from Commonwealth v. Scott, 440 Mass. 642, 646 (2004).
a. Miranda warning and custodial interrogation. A defendant is not entitled to a Miranda warning except when in custody. See Commonwealth v. Vincent, 469 Mass. 786, 795 (2014) ; Cawthron, 479 Mass. at 616-617. "To determine whether a defendant was subjected to custodial interrogation, 'the court considers several factors: (1) the place of the interrogation; (2) whether the officers have conveyed to the person being questioned any belief or opinion that that person is a suspect; (3) the nature of the interrogation, including whether the interview was aggressive or, instead, informal and influenced in its contours by the person being interviewed; and (4) whether, at the time the incriminating statement was made, the person was free to end the interview by leaving the locus of the interrogation or by asking the interrogator to leave, as evidenced by whether the interview terminated with an arrest.' " Cawthron, supra at 617-618, quoting from Commonwealth v. Groome, 435 Mass. 201, 211-212 (2001). "[I]nability to leave may support a finding of custody," but is not sufficient by itself to establish custody. Id. at 623.
Here, it is undisputed the defendant was not in custody when the interview with Detective Sergeant Murray began. The defendant argues the interview became custodial after Detective Sergeant Murray told the defendant that "he was not under arrest and that if he was truthful to me about who had shot at the police officer, that he would not be arrested that night."[5] Detective Sergeant Murray did not make an impermissible ultimatum. Rather, Detective Sergeant Murray promised the defendant he would not be arrested that night if he was truthful; Detective Sergeant Murray did not say the defendant would be arrested if he did not talk or confess. There is a logical discrepancy between the two. In the latter, the defendant must speak or be arrested. Detective Sergeant Murray's actual statement informed the defendant that he would not be arrested that night as a result of his truthful statements, even if they were inculpatory, not that such statements were necessary to leave freely. Compare Commonwealth v. Coleman, 49 Mass. App. Ct. 150, 155-156 (2000) (release conditioned on defendant's confession created custodial environment), with Commonwealth v. Morse, 427 Mass. 117, 127 (1998) (officer's "statement that the defendant 'be truthful' was noncoercive"), and Commonwealth v. Kirwan, 448 Mass. 304, 313 (2007) ("The possibility that an incriminating response might be forthcoming does not necessarily elevate the nature of questioning to a custodial level").
This is not just semantics, but rather a reflection of the context of the interview. Detective Sergeant Murray made his statement in response to the defendant's initial request for the detective to explain what was going to happen to him. See Commonwealth v. Libby, 472 Mass. 37, 46 (2015), quoting from Commonwealth v. Molina, 467 Mass. 65, 74 (2014) (officer "explained to the defendant the focus of his questioning and revealed some degree of suspicion" but "the 'exchange was explanatory rather than accusatory' " in noncustodial interview). Although the defendant was alerted that he could be charged for his involvement, the focus of the investigation was not on the defendant, because the police were primarily looking for the shooter. The knowledge that the police had no intention to arrest the defendant that night unless he lied would naturally lead the defendant to believe he was not in custody. Contrast Coleman, 49 Mass. App. Ct. at 155 (police "unmistakably and forcefully conveyed" that defendant "was the prime suspect" during interrogation and he understood "[h]is 'freedom' was thus threatened and limited"). Cf. Libby, supra (interview's focus on defendant as primary suspect was indicative he would not feel free to leave, but was not enough to justify finding of custody).
Indeed, the defendant was expressly told he was not under arrest. See Groome, 435 Mass. at 213 (defendant's "fear that he might be in custody" addressed when told he was not being arrested by police officer); Libby, 472 Mass. at 46, quoting from Groome, supra at 215 ("To whatever extent the interview may have led a reasonable person to think he or she was not free to leave, 'any such mistaken impression was dispelled by [the officer's] correct explanation of the defendant's actual [noncustodial] status' "). This would only be reinforced by the fact that the defendant was never handcuffed or otherwise constrained at any time by the police that night. See Cawthron, 479 Mass. at 623. Accord Commonwealth v. Bermudez, 83 Mass. App. Ct. 46, 51 (2012), quoting from California v. Beheler, 463 U.S. 1121, 1125 (1983) ("Custody for purposes of Miranda attaches where there is a 'formal arrest' or a 'restraint of movement akin to formal arrest' "). He came to the police station voluntarily, was treated courteously and interviewed calmly and casually, and was given a ride home by officers instead of being arrested. See, e.g., Libby, supra at 47 (noncustodial interview where defendant went to police station voluntarily, was told he was not in custody, was interviewed informally, and "left the police station without hindrance"); Commonwealth v. Woollam, 478 Mass. 493, 506-507 (2017) (informal and short interview where defendant arrived voluntarily and "both he and the detective spoke in calm, even tones" supported finding defendant was not in custody during questioning).
In short, the circumstances surrounding Detective Sergeant Murray's statement to the defendant about speaking truthfully "do not demonstrate an environment 'so dominated by the police that a reasonable person would perceive that his liberty was restrained to a degree associated with a formal arrest.' " Libby, 472 Mass. at 47, quoting from Kirwan, 448 Mass. at 312. See Cawthron, 479 Mass. at 624 ("Because we conclude that the environment was noncoercive ..., the fact that the defendants were not free to leave does not transform the stops into custodial interrogations where the other Groome factors weigh against custody"). Accordingly, the defendant was not entitled to Miranda warnings.
b. Voluntariness. "Where a defendant makes statements to the police while 'not in custody, we focus solely on the question whether his statements were voluntary.' " Libby, 472 Mass. at 48, quoting from Molina, 467 Mass. at 75. "The test for voluntariness of a defendant's statement is 'whether, in light of the totality of the circumstances surrounding the making of the statement, the will of the defendant was overborne to the extent that the statement was not the result of a free and voluntary act.' " Rivers, 93 Mass. App. Ct. at 126, quoting from Commonwealth v. McCowen, 458 Mass. 461, 471 (2010). There is nothing in the interview to suggest that occurred in this case.
Stating that the defendant would not be arrested that night if he spoke truthfully was permissible under the circumstances. "[A]n officer is not prohibited from 'suggest[ing] broadly that it would be "better" for a suspect to tell the truth,' " Commonwealth v. Santana, 477 Mass. 610, 619 (2017), quoting from Commonwealth v. Tremblay, 460 Mass. 199, 209 (2011), and Detective Sergeant Murray's assurance was not combined with misleading comments or any trickery or deception. Compare Commonwealth v. Baye, 462 Mass. 246, 257 (2012) (multiple misrepresentations of evidence against defendant and gravity of crime through ten-hour police interrogation required suppression of statements), and Commonwealth v. DiGiambattista, 442 Mass. 423, 439 (2004) ("combination of trickery and implied promises" of leniency "recognized as potentially coercive to the point of making innocent people confess to crimes"), with Libby, 472 Mass. at 48 (officer "did not engage in any trickery, and this was not a case in which the police obtained a confession by materially misrepresenting the defendant's fundamental constitutional rights"). Indeed, the defendant was truthfully advised that he could be charged and was allowed to leave freely following the interview. Contrast Rivers, 93 Mass. App. Ct. at 126-127 (telling defendant "that coming forward would make him 'very highly likely to avoid being charged with a felony' ... amounted to a prohibited assurance").
The defendant's argument that his confession was coerced by the earlier promise of witness protection is similarly unpersuasive. Any reference by Detective Sergeant Murray to witness protection in regard to the defendant concerned an unrelated crime that occurred years earlier -- and was not discussed or even mentioned during the instant interview. Accordingly, there is nothing in the record to suggest this had any coercive effect on the defendant's statements. See Commonwealth v. Burbine, 74 Mass. App. Ct. 148, 154 (2009) (no evidence of promises or other inducements to support ruling that statement was involuntary). Accordingly, the motion judge properly denied the defendant's motion to suppress.
3. Sentencing. We may "review a sentence to determine whether it is unconstitutional," Commonwealth v. Perez, 477 Mass. 677, 682 (2017), including whether it was "imposed upon a defendant for a crime other than that for which he stands convicted." Commonwealth v. Jackmon, 63 Mass. App. Ct. 47, 56 (2005), quoting from Commonwealth v. Coleman, 390 Mass. 797, 804 (1984). "We do not review the judge's discretion but inquire only whether the sentence was tainted by error of law." Commonwealth v. Vega, 54 Mass. App. Ct. 249, 250 (2002). In this case, we discern no such error.
The defendant was convicted of attempted extortion and receiving stolen goods but acquitted of armed assault with the intent to murder. In considering the defendant's sentence at the hearing, the trial judge commented on aspects of the assault charge. These statements were made in proper consideration of "the circumstances attending the crime's commission," Commonwealth v. Jones, 71 Mass. App. Ct. 568, 576 (2008), on the basis that the defendant was responsible "for an extremely dangerous situation" even though he was not the shooter. Accord Commonwealth v. Oquendo, 83 Mass. App. Ct. 190, 196 (2013). Reference to the defendant as a coconspirator reflects only that the defendant participated in the extortion plot that resulted in an armed assault on an officer. See Vega, 54 Mass. App. Ct. at 251 (acquittal of murder "does not relieve the defendant of responsibility for having set in motion a chain of events in which death was a distinct possibility"). As a result, "[w]e do not read these remarks as reflecting anything other than a consideration of [the] 'nature of the offense and the circumstances surrounding the commission of the crime.' " Commonwealth v. Dora, 57 Mass. App. Ct. 141, 149 (2003), quoting from Coleman, 390 Mass. at 805.
Most significant, the trial judge expressly stated he would "respect the jury's decision" that the defendant "was not convicted of any assault." Compare Coleman, 390 Mass. at 810 ("That the judge was affected by the defendant's false testimony is all too clear from the transcript of the sentencing hearing"), and Commonwealth v. Gomes, 465 Mass. 1003, 1003-1004 (2013) (judge acknowledged defendant's uncharged perjury "affected" sentencing), with Commonwealth v. Morse, 402 Mass. 735, 740 (1988) ("[W]e are not presented with a case ... where the record clearly demonstrated that the defendant was being sentenced for a crime other than that of which he was convicted"). The record here does not establish that the sentence was improper, and we will not disturb it.
Judgments affirmed.

With the Commonwealth's agreement, the trial judge allowed the defendant's motion for a required finding of not guilty on the greater offense of receiving stolen property valued over $250.

Although Detective Bowler recognized the defendant driving the black Honda, he could not identify him by name before seeing him at the station jogged his memory. Without knowledge of the connection between the defendant and the investigation, Detective Bowler would have no inclination to target the defendant outside his own recollection before seeing the defendant a second time. The motion judge also heard testimony that Detective Bowler did not inform fellow officers or his superiors that he recognized the defendant until after the defendant had already been brought in and questioned. Cf. Commonwealth v. Walker, 460 Mass. 590, 604 (2011) (identification was not unnecessarily suggestive because it was not required to "lock onto a suspect").

The defendant is Hispanic with light-to-medium colored skin.

The motion judge found that the defendant was told "he would not be arrested that night if he answered some questions and viewed a photo array" (emphasis supplied). As both parties agreed at oral argument, nothing in the record of the motion hearing supports this finding. Accordingly, we do not accept this finding on appeal. See Cawthron, 479 Mass. at 620-621 ("This factual finding is unsupported by the evidence introduced at the hearing, and, therefore, we decline to defer to it").